## HORNBUCKLE *v.* TOOMBS.

1. The practice, pleadings, and forms and modes of proceeding of the Territorial courts, as well as their respective jurisdictions, were intended by Congress to be left to the legislative action of the Territorial assemblies and to the regulations which might be adopted by the courts themselves. In case of any difficulties arising out of this state of things, Congress has it in its power at any time to establish such regulations on this, as well as on any other subject of legislation, as it shall deem expedient and proper.
2. The cases of *Noonan* v. *Lee* (2 Black, 499), *Orchard* v. *Hughes* (1 Wallace, 77), and *Dunphy* v. *Kleinsmith* (11 Id. 610), reconsidered and not approved.

ERROR to the Supreme Court of the Territory of Montana; the case being thus:

The seventh amendment to the Constitution ordains:

"In suits at *common law*, where, &c., the right of trial by jury shall be preserved; and no fact tried by a jury shall be otherwise re-examined than according to the rules of the common law."

An early statute of the United States, the statute commonly known as the Process Act of 1792,* an act still in force, enacts:

"That the forms of writs, executions, and other process, . . . and the forms and modes of proceeding in *suits*—

"In those of the common law shall be the same as are now used in the said courts, respectively, in pursuance of the act entitled 'An act to regulate processes in the courts of the United States.'

---

* 1 Stat. at Large, 276.

" In those of equity and in those of admiralty and maritime jurisdiction, according to the principles, rules, and usages which belong to courts of equity and to courts of admiralty respectively, as contradistinguished from courts of common law, except so far as may have been provided for by the act to establish the judicial courts of the United States, subject, however, to such alterations and additions as the said courts respectively shall, in their discretion, deem expedient, or to such regulations as the Supreme Court of the United States shall think proper, from time to time, by rule, to prescribe to any Circuit or District Court concerning the same."

In this state of fundamental and of statutory law, Congress, on the 26th of May, 1864,* passed " An act to provide a temporary government for the Territory of Montana." It enacted:

" SECTION 6. The legislative power of the Territory shall extend to all rightful subjects of legislation consistent with the Constitution of the United States and the provisions of this act.

" SECTION 9. The judicial power of said Territory shall be vested in a supreme court, district courts, probate courts, and in justices of the peace. . . . The jurisdiction of the several courts herein provided for, both appellate and original, and that of the probate courts, . . . shall be limited by law. *Provided,* . . . That the said supreme and district courts, respectively, shall possess chancery as well as common-law jurisdiction.

" SECTION 13. The Constitution and all laws of the United States, which are not locally inapplicable, shall have the same force and effect within the said Territory of Montana as elsewhere within the United States."

The Territory being organized, its legislative assembly, in December, 1867, passed a " Civil Practice Act" containing these provisions:

" SECTION 1. There shall be in this Territory but one form of civil action for the enforcement or protection of private rights and the redress or prevention of private wrongs.

* 13 Stat. at Large, 88.

"SECTION 2. In such action, the party complaining shall be known as the plaintiff, and the adverse party as the defendant.

"SECTION 38. The only pleadings on the part of the plaintiff shall be the complaint, demurrer, or replication to the defendant's answer; and the only pleadings on the part of the defendant shall be a demurrer to the complaint, or a demurrer to the replication, or an answer to the complaint.

"SECTION 155. An issue of fact shall be tried by a jury, unless a jury trial is waived, or a reference be ordered, as provided in this act."

In this state of things Toombs brought an action against Hornbuckle in a District Court of the Territory of Montana, for damages caused by the diversion of a stream of water, by which his farm was deprived of irrigation, and for an adjudication of his right to the stream, and an injunction against further diversion. The action was framed and conducted in accordance with the practice as established by the legislative assembly of the Territory, in the provisions last-above quoted.

The case was tried by a jury, who found for the plaintiff, assessed his damage at one dollar, and decided that he was entitled to seventy inches of the water. Upon this verdict the court gave judgment, and awarded an injunction as prayed.

The only errors assigned were based on the intermingling of legal and equitable remedies in one form of action.

*Mr. Robert Leech, for the plaintiff in error:*

The proceedings are erroneous in that they entirely disregard the distinction between the chancery and common-law jurisdiction conferred by Congress upon the Territorial courts, by the organic act. This court has decided in the cases of *Noonan* v. *Lee*,[*] *Orchard* v. *Hughes*,[†] *Dunphy* v. *Kleinsmith*,[‡] *Thompson* v. *Railroad Companies*,[§] and other cases, that legal and equitable matters cannot be thus confused.

---

[*] 2 Black, 499.  
[‡] 11 Id. 610.  
[†] 1 Wallace, 77.  
[§] 6 Id. 137.

The case of *Dunphy* v. *Kleinsmith* was brought here from the Supreme Court of this very Territory of Montana, and this court, in passing upon this legislation and the organic law of the Territory, said:

"It is apparent that the Territorial legislature has no power to pass any law in contravention of the Constitution of the United States, or which shall deprive the Supreme and District Courts of the Territory of chancery as well as common-law jurisdiction."

In *Thompson* v. *Railroad Companies*,* the court was equally emphatic. It said:

"The Constitution of the United States and the acts of Congress recognize and establish the distinction between law and equity. The remedies in the courts of the United States are, at common law, or in equity, not according to the practice of State courts, but according to the principles of common law and equity, as distinguished and defined in that country from which we derive our knowledge of these principles. 'And although the forms of proceedings and practice in the State courts shall have been adopted in the Circuit Courts of the United States, yet the adoption of the State practice must not be understood as confounding the principles of law and equity, nor as authorizing legal and equitable claims to be blended together in one suit.' "

Unless, therefore, this court means to disregard its own solemn precedents made, iterated and reiterated, the judgment and decree below must be reversed.

The precedents rest, too, on obvious reason. The organic act of the Territory does not speak of chancery and common-law jurisdiction otherwise than as distinct systems, and the Process Act of 1792—still in force, undoubtedly contemplating the two systems as distinct systems and to be administered separately, and which act is "not locally inapplicable" to the Territories—has, by the thirteenth section of the or-

---

* 6 Wallace, 137.

ganic act "the same force and effect within the Territory of Montana as elsewhere in the United States."

*Messrs. Montgomery Blair and F. A. Dick, contra.*

Mr. Justice BRADLEY delivered the opinion of the court.

The only errors assigned are based on the intermingling of legal and equitable remedies in one form of action.

Such an objection would be available in the Circuit and District Courts of the United States. The Process Act of 1792* expressly declared that in suits in equity, and in those of admiralty and maritime jurisdiction, in those courts, the forms and modes of proceeding should be according to the principles, rules, and usages which belong to courts of equity and to courts of admiralty respectively, as contradistinguished from courts of common law, subject to such alterations and additions as the said courts respectively should deem expedient, or to such regulations as the Supreme Court should think proper to prescribe. The Supreme Court, in prescribing rules of proceeding for those courts, has always followed the general principle indicated by the law. Whether the Territorial courts are subject to the same regulation is the question which is now fairly presented.

In the case of *Orchard* v. *Hughes*† a majority of this court was of opinion that the Territorial courts were subject to the same general regulations in equity cases which govern the practice in the Circuit and District Courts. That was the case of a foreclosure of a mortgage in the Territorial court of Nebraska, and the court, under a Territorial law, not only decreed a foreclosure and sale of the mortgaged premises, but gave a personal decree against the defendant for the deficiency. We had decided in *Noonan* v. *Lee*,‡ that under the equity rules prescribed for the Circuit and District Courts, such a decree could not be made. The majority of the court now applied the same rule in the case of *Orchard* v. *Hughes*, although it was decided by a Territorial court.

---

* 1 Stat. at Large, 275.        † 1 Wallace, 77.        ‡ 2 Black, 499.

Following out the principle involved in that decision, we subsequently, in the case of *Dunphy* v. *Kleinsmith*,* reversed a judgment of the Supreme Court of Montana, on the ground that the case (being in nature of a creditor's bill, filed to reach property which the debtor had fraudulently conveyed) was a clear case of equity, whilst the proceedings therein exhibited no resemblance to equity proceedings, there being a trial by jury, a verdict for damages, and a judgment on the verdict.

On a careful review of the whole subject we are not satisfied that those decisions are founded on a correct view of the law. By the sixth section of the organic act of the Territory of Montana, with which that of Nebraska substantially agreed, it was enacted, " that the legislative power of the Territory shall extend to all rightful subjects of legislation consistent with the Constitution of the United States and the provisions of this act." By the ninth section it was provided " that the judicial power of said Territory shall be vested in a supreme court, district courts, probate courts, and in justices of the peace," and that " the jurisdiction of the several courts herein provided for, both appellate and original, and that of the probate courts and justices of the peace, shall be limited by law; *Provided*," that " the said supreme and district courts respectively shall possess chancery as well as common-law jurisdiction."

Now, here is nothing which declares, as the Process Act of 1792 did declare, that the jurisdictions of common law and chancery shall be exercised separately, and by distinct forms and modes of proceeding. The only provision is, that the courts named shall possess both jurisdictions. If the two jurisdictions had never been exercised in any other way than by distinct modes of proceeding, there would be ground for supposing that Congress intended them to be exercised in that way. But it is well known that in many States of the Union the two jurisdictions are commingled in one form of action. And there is nothing in the nature

---

* 11 Wallace, 610.

of things to prevent such a mode of proceeding. Even in the Circuit and District Courts of the United States the same court is invested with the two jurisdictions, having a law side and an equity side; and the enforced separation of the two remedies, legal and equitable, in reference to the same subject-matter of controversy, sometimes leads to interesting exhibitions of the power of mere form to retard the administration of justice. In most cases it is difficult to see any good reason why an equitable right should not be enforced or an equitable remedy administered in the same proceeding by which the legal rights of the parties are adjudicated. Be this, however, as it may, a consolidation of the two jurisdictions exists in many of the States, and must be considered as having been well known to Congress; and when the latter body, in the organic act, simply declares that certain Territorial courts shall possess both jurisdictions, without prescribing how they shall be exercised, the passage by the Territorial assembly of a code of practice which unites them in one form of action, cannot be deemed repugnant to such organic act.

A clause in the thirteenth section of the act, however, has been referred to, by which it is declared " that the Constitution, and all laws of the United States which are not locally inapplicable, shall have the same force and effect within the said Territory of Montana as elsewhere in the United States;" and it is argued that by virtue of this enactment, all regulations respecting judicial proceedings which are contained in any of the acts of Congress, are imported into the practice of the Territorial courts. But this proposition is not tenable. Laws regulating the proceedings of the United States courts are of specific application, and are, in truth and in fact, locally inapplicable to the courts of a Territory. There is a law authorizing this court to appoint a reporter. In one sense this law is not locally inapplicable to the Supreme Court of the Territory; but in a just sense it is so. The law has a specific application to this court, and cannot be applied to the Territorial court without an evident misconstruction of the true meaning

and intent of Congress in the clause of the thirteenth section above referred to. That clause has the effect, undoubtedly, of importing into the Territory the laws passed by Congress to prevent and punish offences against the revenue, the mail service, and other laws of a general character and universal application; but not those of specific application.

The acts of Congress respecting proceedings in the United States courts are concerned with, and confined to, those courts, considered as parts of the Federal system, and as invested with the judicial power of the United States expressly conferred by the Constitution, and to be exercised in correlation with the presence and jurisdiction of the several State courts and governments. They were not intended as exertions of that plenary municipal authority which Congress has over the District of Columbia and the Territories of the United States. They do not contain a word to indicate any such intent. The fact that they require the Circuit and District Courts to follow the practice of the respective State courts in cases at law, and that they supply no other rule in such cases, shows that they cannot apply to the Territorial courts. As before said, these acts have specific application to the courts of the United States, which are courts of a peculiar character and jurisdiction.

Whenever Congress has proceeded to organize a government for any of the Territories, it has merely instituted a general system of courts therefor, and has committed to the Territorial assembly full power, subject to a few specified or implied conditions, of supplying all details of legislation necessary to put the system into operation, even to the defining of the jurisdiction of the several courts. As a general thing, subject to the general scheme of local government chalked out by the organic act, and such special provisions as are contained therein, the local legislature has been intrusted with the enactment of the entire system of municipal law, subject also, however, to the right of Congress to revise, alter, and revoke at its discretion. The powers thus exercised by the Territorial legislatures are nearly as exten-

sive as those exercised by any State legislature; and the jurisdiction of the Territorial courts is collectively coextensive with and correspondent to that of the State courts—a very different jurisdiction from that exercised by the Circuit and District Courts of the United States. In fine, the Territorial, like the State courts, are invested with plenary municipal jurisdiction.

It is true that the District Courts of the Territory are, by the organic act, invested with the same jurisdiction, in all cases arising under the Constitution and laws of the United States, as is vested in the Circuit and District Courts of the United States; and a portion of each term is directed to be appropriated to the trial of causes arising under the said Constitution and laws. Whether, when acting in this capacity, the said courts are to be governed by any of the regulations affecting the Circuit and District Courts of the United States, is not now the question. A large class of cases within the jurisdiction of the latter courts would not, under this clause, come in the Territorial courts; namely, those in which the jurisdiction depends on the citizenship of the parties. Cases arising under the Constitution and laws of the United States would be composed mostly of revenue, admiralty, patent, and bankruptcy cases, prosecutions for crimes against the United States, and prosecutions and suits for infractions of the laws relating to civil rights under the fourteenth and fifteenth amendments. To avoid question and controversy as to the modes of proceeding in such cases, where not already settled by law, perhaps additional legislation would be desirable.

From a review of the entire past legislation of Congress on the subject under consideration, our conclusion is, that the practice, pleadings, and forms and modes of proceeding of the Territorial courts, as well as their respective jurisdictions, subject, as before said, to a few express or implied conditions in the organic act itself, were intended to be left to the legislative action of the Territorial assemblies, and to the regulations which might be adopted by the courts themselves. Of course, in case of any difficulties arising out of

this state of things, Congress has it in its power at any time to establish such regulations on this, as well as on any other subject of legislation, as it shall deem expedient and proper.

The judgment is

AFFIRMED.

CLIFFORD, DAVIS, and STRONG, JJ.: We dissent from the judgment in this case for the reason that this court has several times decided that claims at law and claims in equity cannot be united in one action even in the Territorial courts. And we think, if a change in the rule is to be made, that it should be made by Congress.