# THE PEOPLE OF THE TERRITORY OF UTAH,
## APPELLANT, v. WILLIAM DOUGLASS, RESPONDENT.

JUSTICES OF THE PEACE.—JURISDICTION.—Justices of the peace under the statutes of the territory have jurisdiction to try an offender charged with the crime of battery, such crime being punishable by a fine in any sum less than three hundred dollars or by imprisonment not exceeding six months, and jurisdiction to try a case of battery being given expressly by the statutes of the territory: *overruling Yearian vs. Spiers*, 4 Utah, 482.

APPEAL from a judgment of the district court of the first district, sustaining a demurrer to a criminal complaint. The opinion states the facts.

*Mr. C. C. Richards*, for appellant.

Under common law, in absence of statute, justices of the peace have no authority whatever to hear, try, and determine causes: Wells on Jurisdiction of Courts, secs., 388, 65-68 and notes; Hawes on Jurisdiction of Courts, sec. 32 and notes; *Way's Case*, 41 Mich., 303; *Dillard* v. *R. R.*, 58 Mo., 74; 36 Am., Dec., 693.

The authorities cited above show conclusively that the jurisdiction to hear, try, and determine any cause is wholly a statutory one, and that no part of it is derived from the common law; but we can go still farther, and we will discover that there never has been any common law of the United States, and that the common law can only be made a part of our federal system by legislative [congressional] adoption. Each state has its own common law, peculiar to its own customs and institutions, which differs more or less from that of all other states. So that when we speak of the common law we must be understood as meaning the common law of the state or territory of which we are speaking, and not the common law of the United States— for the United States has no common law, either civil or criminal: *Wheaton* v. *Peters*, 8 Peters, 591 to 658; *Van Ness* v. *Packard*, 2 Peters, 144; *Fisher's Lesee* v. *Cocker-*

*ell,* 5 Peters, 253; *U. S.* v. *Hudson,* 7 Cranch, 32; *Kendell*
v. *U. S.,* 8 Peters, 524; Wells on Jurisdiction of Courts,
sec. 198; *First National Bank* v. *Kinner,* 1 Utah, 105
to 107.

I assume that under sections 6 and 9 of the Organic Act
of this Territory, and sections 1866 and 1907 of the Revised
Statutes of the United States, the power has been con-
ferred upon the Legislative Assembly of this Territory to
define the jurisdiction of justices of the peace in criminal
cases.

Section 9 of our Organic Act provides: "That the
judicial power of said Territory shall be vested in a supreme
court, district courts, probate courts and in justices of the
peace. * * * The jurisdiction of the several courts
herein provided for, both appellate and original, and that
of the probate courts, and justices of the peace, shall be *as*
limited by law:—*Provided,* that justices of the peace shall
not have jurisdiction of any matter in controversy, when
the title or boundaries of land may be in dispute, or where
the debt or sum claimed shall exceed one hundred dollars;
and the said supreme and district courts respectively shall
possess chancery as well as common law jurisdiction."

By the third section of what is commonly called the
"Poland Bill," approved June 23rd, 1874, Congress extended
the civil jurisdiction of justices of the peace to all cases
where the debt or sum claimed is less than three hundred
dollars.

Section 1907 of the Revised Statutes of the United
States reads as follows: "The judicial power in New Mex-
ico, Utah, Washington, Colarado, Dakota, Idaho, Montana
and Wyoming, shall be vested in a supreme court, district
courts, probate courts, and in justices of the peace."

And section 1866 of the Revised Statutes of the United
States enacts that: "The jurisdiction, both appellate and
original, of the courts provided for in sec. 1907 and 1908,
shall be limited by law."

Section 6 of the Organic Act is as follows: "That the
legislative power of said territory shall extend to all right-
ful subjects of legislation consistent with the Constitution
of the United States and the provisions of this act; but no

law shall be passed interfering with the primary disposal
of the soil; no tax shall be imposed upon the property of
the United States; nor shall the lands or other property of
non-residents be taxed higher than the lands or other prop-
erty of residents. All the laws passed by the Legislative
Assembly and Governors shall be submitted to the Con-
gress of the United States, and if disapproved shall be null
and of no effect."

This confers upon the legislature very extended authority,
and the only points for us to consider are: 1st. Is the
matter in issue a rightful subject of legislation? 2nd. Is
the legislation consistent with the Constitution of the
United States? 3d. Is it consistent with the provisions
of the Organic Act for the legislature to define the criminal
jurisdiction of justices of the peace?

The subject of jurisdiction of justices of the peace is a
rightful subject of legislation: *Clinton* v. *Englebrecht*, 13
Wall., 434; *Hornbuckle* v. *Toombs*, 18 Wall., 648.

The general history of our jurisprudence shows that at
and prior to the passage of the Organic Act, in several of
the states the jurisdiction, both civil and criminal, of jus-
tices of the peace differed materially and was being en-
larged and extended from time to time. In several the
jurisdiction to-day extends to imprisonment for six months,
and fine ranging from one hundred dollars to five hundred
dollars, or both. Thus we see the history referred to
shows it to have been an increasing jurisdiction from the
begining. In all of the territories these justices have had
criminal jurisdiction ranging all the way from thirty days
to one year's imprisonment; and from $100 to $500
fine, or both, in the discretion of the court. In all of the
states and territories, from the begining of our judicial
system until the present time, the assemblies have from
time to time, increased and extended the justice's powers,
both in civil and criminal cases. In Nevada the jurisdic-
tion is not to exceed six months' imprisonment, or $500
fine, or both. In California it is not to exceed six months'
imprisonment, or $500 fine, or both. In Pennsylvania it
is not to exceed three months' imprisonment, or $300 fine, or
both. In Arizona it is not to exceed one year's imprison-

ment, or $300 fine, or both. In Wyoming, it is not to exceed six months' imprisonment, or $100 fine. In Montana, it is not to exceed three months' imprisonment or $100 fine, or both, (with a more extended jurisdiction upon the probate courts). In Idaho, it is not to exceed six months' imprisonment, or $100 fine, or both; (the probate courts exercising a more extended jurisdiction). In Michigan it was (and I understand still is) not to exceed three months' imprisonment and $100 fine, or both. And still we find but two cases, the one from Idaho, and one from Utah, where the right of the assemblies to so legislate has ever been questioned. It seems remarkable indeed that if the legislatures have exceeded their authority it has not been brought in question elsewhere.

When we analyze the decision in the case of *Yearian* v. *Spiers*, (4 Utah, 482), we find that the whole and vital objection raised to the jurisdiction of the justice is concentrated in this: That the legislature has authorized the infliction of too heavy a punishment; thereby putting in the hands of the justice power to punish too severely.

We are not told that the justice ought not to be entrusted with the trial of such offenses—on the contrary it is admitted that he should be—but we are told, inferentially, that the legislature ought either to make the punishment less, or not attempt to entrust the trials to justices of the peace.

The punishment to be inflicted, and not the class of offenses, it seems, is to determine the justice's authority. Such being the case, let us pursue the question further. In all communities the law-making power enacts what are crimes, and the doing or omitting to do of only such things as it prohibits by statute, is criminal. No one would pretend to say that it would be a crime to do or omit to do any act, unless the law-making power had so declared. Again, we must admit that the legislature is the only body that can say what punishment can be inflicted for the commission of any crime. (*Bray* v. *U. S.*, 1 New Mexico, 1). It says that the punishment shall be from one to ten years' imprisonment in the penitentiary, in the discretion

of the court, for grand larceny; and that it shall be death or imprisonment for life for murder in the first degree. Dare any of us say that the legislature can not be so severe in its punishment? Certainly not, we must all admit that it can. We have nothing whatever to do with that. The legislative prerogative is to make such laws as it sees proper, so long as they are constitutional. The courts construe them, and must inflict the prescribed punishments. The courts cannot legislate, nor can the assemblies adjudicate.

From our review of the situation in the states and territories prior to the passage of our Organic Act (1850), how can we say that Congress intended to prohibit the legislature from regulating the criminal business of the territory? I can not understand the reasoning, that because Congress put no limitation upon the criminal jurisdiction which can be conferred upon the justice, we must still presume one. It is admitted that Congress authorized the assembly to confer civil jurisdiction upon the justices, when the amount in dispute was less than $100. Still that gave the justices no authority. It merely authorized the assembly to confer the powers to a limited extent. How then can we contend that if that limitation should be removed, the assembly could not extend the jurisdiction to $500? So with the criminal. Congress meant one of two things: it intended by its silence in the organic act relative to criminal jurisdiction, either that the justice should have no criminal jurisdiction whatever, or that the local assembly should say what the jurisdiction should be. It seems to me there can be no question as to which was intended—it was left for the assembly to determine. (*Bray* v. *United States*, 1 New Mexico, 1).

*Mr. W. R. White*, for respondent.

Cited *Yearian* v. *Spicrs*, 4 Utah, 482; *Ferris* v. *Higley*, 20 Wallace, 375.

ZANE, C. J.:

This prosecution was instituted before a justice of the peace, in Ogden precinct, in Weber county. The com-

plaint charged the defendant with the crime of battery. The defendant demurred to the complaint, for the reason that a justice of the peace had no jurisdiction to try a person charged with the offense of battery. The demurrer was overruled, the defendant was tried, found guilty, and sentenced to pay a fine of twenty-five dollars, or in default of such payment to be imprisoned at the rate of one day for each dollar of the fine. From that judgment the defendant appealed to the first district court, wherein the demurrer to the complaint was sustained and judgment rendered accordingly.

This appeal is from the latter judgment.

The question presented for our consideration and decision is, have justices of the peace in this territory authority to try a person accused of the crime of battery. That offense may be punished in this territory by a fine in any sum less than three hundred dollars or by imprisonment for any time not longer than six months, or by both. The statutes of the territory declare that justices of the peace shall have jurisdiction of petit larceny, of assault and battery, not charged to have been committed upon a public officer in the discharge of his duty, of breaches of the peace, committing a willful injury to property, and all misdemeanors punishable by a fine less than three hundred dollars, or imprisonment in the county jail or city prison, not exceeding six months, or by both such fine and imprisonment: Sec. 48, Code of Civil Procedure. Jurisdiction is given in express terms to justices of the peace to try battery cases. But the defendant denies the power of the territorial legislature to. confer such jurisdiction on justices' courts.

The authority to pass such a law, if possessed by the territorial legislature, is given by the following provisions of the Organic Act, and of the acts amendatory thereof. Section four of the Organic Act provides that "the jurisdiction of the several courts herein provided for, both appellate and original, and that of the probate courts and of justices of the peace, shall be as limited by law: Provided, that justices of the peace shall not have jurisdiction of any matter in controversy where the title or boundaries

of land may be in dispute, or when the debt or sum claimed shall exceed one hundred dollars: Secs. 1866, 1867, 1926 S. C., Compiled Laws of Utah, 1876, p. 31.

Section three of a subsequent act of Congress extends the civil jurisdiction of these courts to all cases in which the debt or sum claimed shall be less than three hundred dollars, and gives the right of appeal from all judgments of these courts: Supplement Revised Stat., 1874-1881, p. 107; S. C. Compiled Laws of Utah, 1876, p. 54.

The foregoing provisions limit the jurisdiction of justices of the peace to cases in which the debt or sum claimed is less than three hundred dollars, and exclude cases involving the title or boundary of land. These limitations do not apply to criminal cases. Section 1866, Revised Statutes U. S., 1878, declares that the jurisdiction of justices of the peace, as well as the jurisdiction of other courts referred to, shall be as limited by law. This is equivalent to a declaration that justices of the peace shall have jurisdiction to try all causes of action that might arise within the limits fixed by law—it extends their authority to such limits. By the above provision Congress imposed the duty upon the law-making power of passing laws, limiting the jurisdiction of justices of the peace. And inasmuch as Congress has not enacted such laws the intention must have been to impose the duty on the law-making body, for which it made provision in Section 6 of the Organic Act, in the following terms:

"That the legislative power of said territory shall extend to all rightful subjects of legislation, consistent with the Constitution of the United States and the provisions of this act, but no law shall be passed interfering with the primary disposal of the soil; no tax shall be imposed upon the property of the United States; nor shall the lands or other property of non-residents be taxed higher than the lands or other property of residents. All the laws passed by the legislative assembly and governor shall be submitted to the Congress of the United States, and if disapproved shall be null and of no effect. The territorial act in question has not been disapproved by Congress.

The language of the section quoted is, "the legislative

power of said territory shall extend to all rightful subjects of legislation consistent with the Constitution of the United States and the provisions of this act." The territorial enactment in question appears to be consistent with the Constitution and the laws of Congress. The jurisdiction of justices' courts to try cases is a rightful subject of legislation, because it is always conferred by legislation.

"At common law a justice of the peace had no power to try any offenses whatever. He was no more than an examining magistrate, to inquire into offenses with a view of holding parties for trial on indictment elsewhere, if sufficient cause was shown to commit the accused. But the power of trying and convicting petty offenders is entirely statutory, and must be conducted as the law prescribes." *Sarah Way's Case*, 41 Mich., 300. To the same effect is the case of *Marlin* v. *Fales*, 36 American Decisions, 693.

The jurisdiction of justices of the peace has been extended latterly both in England and in the United States. In the various states of this country the jurisdiction, both civil and criminal, differs, and has been changed as to its extent in some of the states.

Increasing intelligence has expanded the capacities of men, and advancing enterprise has widened the field of their duties, and accordingly the respective states have extended the labors of their magistrates in obedience to the conceived demands of the public good. There is no uniform limit to their jurisdiction common to the states. In a number of the states and territories the jurisdiction of justices of the peace at the present time extends to six months' imprisonment and a fine ranging from one hundred to five hundred dollars. In California the limitation is not to exceed six months' imprisonment or a fine of five hundred dollars, or both. In Nevada a justice may imprison for six months or impose a fine of five hundred dollars, or both. In other states and in the territories the jurisdiction of justices' courts varies.

In construing the provision of the Organic Act, under consideration, the supreme court of the United States said: "When Congress has proceeded to organize a gov-

ernment for any of the territories, it has merely instituted a general system of courts therefor, and has committed to the territorial assembly full power, subject to specified or implied conditions, of supplying all details of legislation necessary to put the system into operation, even to the defining of the jurisdiction of the several courts. As a general thing, subject to the general scheme of local government chalked out by the Organic Act, and such special provisions as are contained therein—local legislatures have been entrusted with the enactment of the entire system of municipal law, subject also, however, to the right of Congress to revise, alter, and revoke at its discretion. The powers thus exercised by the territorial legislatures are nearly as extensive as those exercised by any state legislature." *Hornbuckle* v. *Toombs*, 18 Wall., 648. Again in the case of *Westray* v. *United States*, Id., 322, referring to the same legislative power the same court said: "The power given to the legislature is extremely broad." To the same effect are the cases of *Chamusero* v. *Potts*, 2 Montana, 242; *Bray* v. *United States*, 1 New Mexico, 1; *Territory* v. *Valdez*, Id., 548, and *Clinton, et al.* v. *Englebrecht*, 13 Wallace, 434.

Counsel for the defendant relies on *Ferris* v. *Higby*, 20 Wallace, 375. In that case an act of the legislature of the territory of Utah conferring general jurisdiction on probate courts was held to be inconsistent with the organic law of the territory. It was held not to be the intention of Congress by the Organic Act to convert the probate court into a court in which all causes, whether civil or criminal, whether of common law or of chancery cognizance, whether involving life, liberty, or property, should be tried and determined. The court held, however, that the power to define the jurisdiction of the territorial courts might be included within the meaning of the phrase "rightful subject of legislation," and that the territorial act in question, in that case, was not inconsistent with the Constitution of the United States, but that it was inconsistent with the Organic Act itself. In considering that act the court pointed out the provisions with which the territorial act was inconsistent. Among them were the

following: the act declared that the supreme and district courts respectively should possess chancery as well as common law jurisdiction, while the probate courts were left with such powers as their title indicated; that their name described their functions; that they were such as had been united under the name and had been exercised by those courts in England and in this country.

They were such as it had been necessary for them to use in the settlement of the estates of deceased persons, the estates of infants, and of persons of unsound mind, and in adjudications as to dower and the appointment of guardians and conservators. The Organic Act provided that the judge of district courts should be appointed by the President by and with the advice and consent of the Senate, while the election or appointment of probate judges was left to be provided for by the territoral legislature. The court said: "Looking then to the purpose of the Organic Act to establish a general system of government and its obvious purpose to say what courts shall exist in the territory, and how the judicial power shall be distributed among them, and especially to the fact that all ordinary and necessary jurisdiction is provided for in the supreme and district courts and that of justices of the peace, and that the jurisdiction of the probate court is left to rest in the general nature and character of such courts as they are recognized in our system of jurisprudence, is it not a fair inference that it was not intended that that court should be made one of general jurisdiction?" And, finally, the court said: "The fact that the judges of the latter courts are appointed by the federal power and paid by that power—that other officers of these courts are appointed and paid in like manner—strongly repels the idea that Congress in conferring on these courts all powers of courts of general jurisdiction, both civil and criminal, intended to leave to the territorial legislature the power to practically evade or obstruct the exercise of those powers by conferring precisely the same jurisdiction on courts created and appointed by the territory."

It is clear that the case cited is not analogous to the one in hand. No such inconsistencies exist between the act in

hand and the organic law, as was pointed out between the act held to be invalid in the case cited and the organic law.

It is conceded that justices of the peace in this country have usually had jurisdiction of assaults and batteries and other misdemeanors of like grade, but counsel urged that the maximum punishments for these offenses are fixed so high in this territory that justices' courts ought not to be entrusted with their infliction.

The answer to this is that before the enactment in question justices of the peace had jurisdiction of the same class of offences in states and territories, in which the punishment inflicted was as great as in this territory. And the history of such jurisdiction shows that it has had no common and abiding limits. The mention of the office of justice of the peace in the Organic Act indicated jurisdiction of the offence of battery and other like misdemeanors. In many of the states, however, the term did not indicate the power to inflict punishment to the same extent as authorized by the act under consideration; while in others it indicated power to impose even greater punishment.

To hold that the prosecution of assaults, batteries, breaches of the peace, and other misdemeanors of like character must be commenced by indictment in the district courts would cause great inconvenience, hardship, and delay in many cases, because that court holds but four terms during the year and because the offences are often committed at a distance from the place of sitting. In such cases the defendant and all the witnesses would be compelled to travel a greater distance and at considerable expense.

The hardship, delay, inconvenience and expense would be greatly lessened by a trial near the place where the offence was committed. The public good demands that such petty offences shall be tried before a magistrate in the neighborhood of the place of their committal, if at that place such an officer with the requisite qualifications can be found. The public welfare demands as little delay and hardship in the prosecution of persons charged with crime as is consistent with a faithful enforcement of the law.

We are disposed to hold that the territorial act in question conferring jurisdiction on justices of the peace to try persons accused of the crime of battery, and other misdemeanors of the same grade, is valid. We have been referred to the case of *Yearian* v. *Spiers*, 4 Utah, 482. That case was decided under the impression that no precedent existed for confering such extended jurisdction on justices of the peace. After hearing further argument upon the question involved and upon more mature deliberation we are of the opinion that that case, so far as it conflicts with this, should be overruled.

The judgment of the court below sustaining the demurrer to the complaint is reversed, and the case is remanded for further proceedings in that court.

HENDERSON, J., concurring.

Sitting in the district court I sustained the demurrer in this case on the authority of *Yearian* v. *Spiers*, 4 Utah, 482, decided by this court, which is directly in point. I have carefully examined the learned and able opinion of my brother Boreman in that case, and while I agree with him that in conferring upon the territorial legislature the power to fix the jurisdiction of justices of the peace, they meant only to confer the rights to give such jurisdiction as the title "justice of the peace" implied, having reference to the judicial history and customs of the country: but within this limit all questions of public policy and propriety are for the legislature. I do not think that the act under consideration extends this limit, as is shown by the authorities referred to in the opinion of the chief justice, I therefore concur in the opinion of the chief justice that the judgment of the district court should be reversed.

BOREMAN, J., dissented.