## UNITED STATES, RESPONDENT, *v.* NATHANIEL V. JONES AND ANOTHER, APPELLANTS.

CRIMINAL LAW—RIGHT TO SEPARATE TRIAL.—Under section 262 of Code of Criminal Procedure, providing that "when two or more defendants are jointly indicted for a felony, any defendant requiring it must be tried separately," and under section 1845 Compiled Laws, 1876, defining a felony as a crime punishable with death or imprisonment in the penitentiary, two persons jointly indicted for an offense against the laws of the United States under section 5451 Revised Statutes U. S., prescribing therefor a fine and imprisonment, but not characterizing the offense as felony or misdemeanor, are entitled to separate trials, the place of imprisonment for offenders against the laws of the United States being the penitentiary.

APPEAL from a judgment of the district court of the third district, and from an order refusing a new trial. The opinion states the facts.

*Mr. Arthur Brown and Mr. Le Grande Young,* for appellants.

*Mr. George S. Peters and Mr. W. H. Dickson,* for respondents.

HENDERSON, J.:

The defendants were convicted of bribery. The prosecution was brought under section 5451 of the Revised Statutes of the United States, providing punishment for any person or persons who shall bribe, or attempt to bribe, any United States officer, intending thereby to induce him to do or not to do any act in violation of his lawful duty. A demurrer was interposed, which was overruled, and the defendants asked and demanded separate trials. This was refused by the court, and they were put on trial together.

The question as to whether the defendants were entitled to separate trials is the only one we deem it necessary to discuss, and is one of importance and difficulty. The territorial statute (section 1845, p. 568, Comp. Laws 1876) provides that "a felony is a crime which is or may be punishable with death or imprisonment in the penitentiary. Every other crime is a misdemeanor." Section 262 of the Criminal Practice Act of 1878 is as follows: "When two or more defendants are jointly indicted for a felony, any defendant requiring it must be tried separately. In other cases the defendants may be tried separately or jointly, in the discretion of the court." It is admitted that the territorial statute would govern when it relates only to practice and procedure, and in our opinion this statute relates only to procedure, and does not curtail or restrain the jurisdiction of the court: *Reynolds* v. *U. S.*, 98 U. S., 145; *Miles* v. *U. S.*, 103 U. S., 304; *Hornbuckle* v. *Toombs*, 18 Wall., 648; *Clinton* v. *Englebrecht*, 13 Wall., 434. The statute under which this prosecution is brought does not characterize the offense as a felony or a misdemeanor, but simply provides that whoever violates it shall be fined not to exceed three times the amount of the value of the bribe offered, and shall be imprisoned not more than three years. No place of imprisonment is designated in the statute, but under the law of the United States in force in this territory all persons convicted of offenses against the laws thereof, when any imprisonment is inflicted, are imprisoned in the penitentiary. On the part of the de-

fense it is claimed that as the defendants might be imprisoned in the penitentiary, that therefore they are entitled as of right to separate trials, while on the part of the government it is contended that, as the crime is not characterized as a felony, the statute of the territory providing for separate trials does not apply, but that it must be regarded as a misdemeanor within its meaning. The Criminal Code of the United States recognizes no distinction between felonies and misdemeanors as they existed at common law: *U. S.* v. *Wynn*, 9 Fed. Rep., 886. Nor, as a rule, does it classify or distinguish crimes as such, or recognize it as a standard in grading punishments. The chapter in which the statute under which this punishment is brought is found, declares and provides punishments for many crimes, and in many cases the penalties are extreme, but in very few instances are they characterized or classified as felonies or misdemeanors. There is no doubt that the legislature, in passing the statute giving defendants jointly indicted the right to demand and have separate trials, intended to give that right to persons charged with the more serious and aggravated crimes, and for which the penalties are considerable, and to deny it as a matter of right to persons charged with petty offenses. This is no doubt the spirit and intent of the statute. The statutes of the territory punish the former class of offenses by imprisonment in the penitentiary, while the latter are punished otherwise. In formulating the statute relative to separate trials the legislature used the term "felony" with the meaning that it had previously provided it should have, that is, "crimes which might be punished with death, or imprisonment in the penitentiary." The rule was made as a part of the territorial system, and it used a standard of its own, one that is recognized by the system, and is certain, and thereby accomplished its purpose. When this rule comes to be adopted and applied to a jurisdiction or a system that does not recognize the standard used by the rule in determining the particular cases to which it applies, then, in applying it, its spirit and object should be consulted. We do not mean to say that there might not be cases where the

penalty to be inflicted under a United States statute is so
small and trivial that even though imprisonment would
have to be in the penitentiary, it might still be regarded
as not within the reason of the statute.   But where the
penalty is of the severity provided in this statute under
which this prosecution is brought, we think that, as a
matter of right, the defendants were entitled to demand
separate trials.   For this error the judgment appealed
from is reversed, and the cause remanded.

BOREMAN, J., concurred.

ZANE, C. J., dissenting.

I cannot concur in the judgment of the court.   The
defendants were jointly indicted for a violation of section
5451 of the Revised Statutes of the United States.   They
were accused of bribing Edward A. Franks, a deputy
United States marshal.   They demanded a separate trial
without assigning any reason as a legal right.   The evi-
dence offered at the trial proved that they conspired to-
gether in the commission of the crime, and the evidence
of guilt was admissible against both defendants.   The
court denied their motion, and this the defendants assign
as error.   The general rule is that persons jointly in-
dicted are tried together.   In the language of Bishop:
"When the indictment is properly made joint against
more persons than one it is never the right of the de-
fendants, as the matter stands at common law, to demand
separate trials.   Yet, separate trials may be permitted by
the judge, at his discretion, on cause being shown him.
. . .   By statute, in some of the states, defendants are
authorized generally, or in some cases, to demand separ-
ate trials, if they choose, as matter of right." Bish. Crim.
Proc., sec. 1018.   But, conceding that the general rule is
that the court may grant a separate trial in its sound dis-
cretion for a cause shown, it is claimed that the practice
in the case in hand is controlled by section 262, Laws
Utah, 1878: "When two or more defendants are jointly in-
dicted for a felony, any defendant requiring it must be
tried separately.   In other cases the defendants jointly

indicted may be tried separately or jointly, in the discretion of the court. Should this territorial statute be applied to a criminal case under the laws of the United States? One sovereignty has no power to make laws for another. It is true that Congress may adopt rules of practice enacted by a state, but in criminal prosecutions for violations of the laws of the United States Congress never adopts the rules of practice enacted by the state legislature. It is also true that the territorial government is not a sovereignty. It is a government, however, whose legislative power extends to all rightful subjects of legislation consistent with the Constitution of the United States and the laws thereof. It has powers to make laws for the territory, not for the United States. It possesses such power as Congress has given it. In section 6 of an act to establish a territorial government for Utah, Congress has declared "that the legislative power of said territory shall extend to all rightful subjects of legislation consistent with the Constitution of the United States and the provisions of this act." And in section 9 of the same act, after mention of the supreme, district, and probate courts, and justices of the peace, the following language is found: "The jurisdiction of the several courts herein provided for, both appellate and original, . . . shall be as limited by law, . . . and each of the said district courts shall have and exercise the same jurisdiction in all cases arising under the Constitution and laws of the United States as is vested in the circuit and district courts of the United States." Similar language is found applicable to all the territories in section 1910 of the Revised Statutes of the United States. The district courts in the territories are required to exercise the same jurisdiction in all cases under the Constitution and the laws of the United States as is vested in the circuit and district courts thereof. The territorial legislature had no power to restrain or control the district court in the exercise of its powers and jurisdiction in any cases arising under the laws of the United States. Its authority was such as the circuit and district courts possessed, and it had the power to exercise it to the same extent as those courts might. The jurisdic-

tion of a court consists of its lawful authority to act as a
court. The jurisdiction of a court embraces all the discre-
tion it may lawfully exercise, and every decision and order
it may lawfully make, every writ that it issues, and every
judgment that it pronounces. The jurisdiction of a court,
the authority of a court, and the powers of a court, are
synonymous terms. Their legal meaning is the same. The
jurisdiction of the circuit and district courts of the United
States embraces their authority to order the separate trials
of parties jointly indicted, the making of such an order
either denying or granting a separate trial is as much an
exercise of the jurisdiction of those courts as the making
of any other decision or entering any judgment in the
case, interlocutory or final. In the case of *Hopkins* v.
*Com.*, 3 Metc., 460, the supreme court of Massachusetts,
Shaw, C. J., delivering the opinion of the court, said: "The
word 'jurisdiction' (*jus dicere*) is a term of large and com-
prehensive import, and embraces every kind of judicial ac-
tion upon the subject-matter, from finding the indictment
to pronouncing the sentence. . . . To have jurisdiction
is to have power to inquire.into the fact, to apply the law,
and to declare the punishment in a regular course of judi-
cial proceeding." In the case of *Wayman* v. *Southard*, 10
Wheat., 1, Chief Justice Marshall, delivering the opinion
of the court, said: "There is no reason for supposing that
the general term 'writs' is restrained by the words which
may be necessary for the exercise of their respective juris-
dictions to original process or to process anterior to judg-
ments. The jurisdiction of a court is not exhausted by
the rendition of its judgment, but continues until that
judgment is satisfied. Many questions arise on the pro-
cess subsequent to the judgment in which jurisdiction is to
be exercised." These two cases establish clearly that jur-
isdiction includes the power of the court to issue all law-
ful writs and the making of all lawful rulings, orders, and
decisions. All its lawful action is exercise of its jurisdic-
tion. The powers of a court constitute its jurisdiction. If
the circuit and district courts of the United States possess
the jurisdiction, the authority to grant or deny separate
trials, in their discretion, then the third district court in

the case in hand possessed the same authority, the same power, the same jurisdiction. The United States courts may, in their discretion, on cause being shown, order the separate trials of persons indicted for crimes against the laws of the United States. Circuit and district courts of the United States follow the common-law rule. This question was settled by the supreme court of the United States in the leading case of *U. S.* v. *Marchant,* 12 Wheat., 480. The opinion was delivered by Justice Story. After stating that the question was "whether two or more persons, jointly charged in the same indictment with a capital offense, have a right by the laws of the country to be tried severally, separately, and apart, the counsel for the United States objecting, or whether it is a matter to be allowed in the discretion of the court," he said: "We have considered the question, and are of opinion that it is a matter of discretion in the court, and not of right in the parties; and it has become my duty briefly to expound some of the reasons which urge us to that conclusion." And after a careful examination and consideration of the authorities and the reasons, the court conclude: "Such is the substance of the reasons which induce us to decide against the claim as a matter of right. In our opinion it is a matter of sound discretion to be exercised by the court, with all due regard and tenderness to prisoners, according to the known humanity of our criminal jurisprudence." The case of *U. S.* v. *Ried,* 12 How., 361, was a joint indictment for murder against Ried and Clements, and by permission of the court they were separately tried, and upon the trial of Ried he proposed to call Clements as a witness on his behalf under a statute of Virginia adopted in 1849. This statute would have rendered Clements competent could it have been applied to cases under the laws of the United States. The thirty-fourth section of the act of Congress of 1789 declared that the ‧laws of the several states, except where the Constitution, treaties, or statutes of the United States shall otherwise require or provide, shall be regarded as rules of decision in trials at common law in the courts of the United States in cases where they apply. The case came before the supreme court upon a certificate of division

between the judges of the circuit court. In deciding the point the court said, by Chief Justice Taney: "But it could not be supposed, without very plain words to show it, that Congress intended to give to the states the power of prescribing the rules of evidence in trials for offense against the United States; for this construction would, in effect, place the criminal jurisprudence of one sovereignty under the control of another. It is evident that such could not be the design of this act of Congress, and that the statute of Virginia was not the law by which the admissibility of Clements as a witness ought to have been decided." The "rules of evidence" referred to in the above quotation are to be applied in trials of offenses against the United States, whether in a district, a circuit court, or in a territorial court—in whatever court the trial might be had. The objection was to a state legislature prescribing rules to be used in the trial of offenses against the United States. If the territorial legislature may enact rules of evidence and practice to govern in the trial of offenders against the laws of the United States, the criminal jurisprudence of the federal government is thereby placed under the control of a territory. The supreme court, in deciding a civil case, said: "The learned counsel for the plaintiffs in error have referred to a statute of Iowa as regulating the practice in this class of cases. It is proper to remark that the provisions of that statute, not having been adopted by a rule of the circuit court for that district, could have no effect in this proceeding. A state law prescribing rules of practice has no efficacy *proprio vigore* in the courts of the United States. It can only be made effectual by adoption in the proper manner:" *Mayor* v. *Lord,* 9 Wall., 409.

The objection in this case was to a state law prescribing rules of practice to be used in a United States court. The United States court, having the power, may adopt the same rules of practice as the state courts are governed by. In criminal trials, under the laws of general federal government, the courts do not adopt rules of practice prescribed by state legislatures. Section 914 of the Revised Statutes of the United States, in force June 1, 1872,

changed the rule in certain civil cases. It is: "The practice, pleading and forms and modes of proceeding in civil causes other than equity and admiralty causes, in the circuit and district courts, shall conform as near as may be to the practice, pleading and forms and modes of proceeding existing at the time in like causes in the courts of record in the state within which such circuit or district courts are held, any rule of court to the contrary notwithstanding." Congress has always been careful to leave the practice in the trial of crimes against the United States the same throughout its jurisdiction. Its definitions of crime are the same within the limits of its jurisdiction, and the practice and evidence for the trial of persons charged with crimes against its laws should also be uniform. For the same kind of offenses against the federal government persons accused of crime should not be tried according to different rules of evidence and practice in different parts of the country. Such rules ought to be of general application throughout its jurisdiction. Section 1891 of the Revised Statutes of the United States declares that "the constitution and all laws of the United States, which are not locally inapplicable, shall have the same force and effect within all the organized territories, and in every territory heretofore organized, as elsewhere within the United States."

Federal laws defining crimes and providing for their punishment are enforced and made effectual by means of a trial and conviction, and if the territorial legislature may prescribe rules of evidence and practice to be applied in such trials, then the effect of the laws defining such crimes and providing for their punishment, will depend largely upon the action of such legislature, and those laws will not have the same force and effect in the territories as elsewhere within the United States. Whether the district courts of the territories are United States or territorial courts it is not necessary to determine for the purposes of this case. They are undoubtedly established by virtue of laws of the United States. Whether the power to enact such laws is incident to the right to acquire territory, and hold it, or is in pursuance of the authority to make all

needful rules and regulations respecting the territory be-
longing to the United States, it is not necessary to de-
termine now.    The judges are appointed by the president,
by and with the advice and consent of the senate, and in
like manner the marshal and prosecuting attorney are ap-
pointed.    Their terms of office are fixed by federal laws,
and they are paid by the United States.    The district
courts of the territories, considered with respect to the au-
thority by which they are established, must be regarded
as United States courts.    But they act as United States
courts and as territorial courts. They act in two capacities.
When engaged in the trial of cases under the laws of the
United States they are acting as United States courts, and
when engaged in the trial of cases that would be tried
in the state courts, were the territory a state,  they act
as territorial courts.    The true position to take undoubt-
edly is that, when engaged in the trial of cases under
the laws of the United States, they possess all the powers,
the same jurisdiction, as circuit and district courts of the
United States when so engaged: *U. S.* v. *Haskins*, 3
Sawy., 262; *Hunt* v. *Palao*, 4 How., 589.

In the case of *Clinton* v. *Englebrecht*, 13 Wall., 434,
the supreme court of the United States held that the pro-
vision of the organic law providing that the legislative
power of the territory should extend to all rightful sub-
jects of legislation consistent with the constitution of the
United States, and the provisions of that act gave to the
territorial legislature the authority to prescribe the method
of selecting and impaneling jurors.    The court said: "We
are of the opinion that the making of the jury-list by the
county court was not a judicial act," and held that, in mak-
ing the selection, the judge of probate and selectmen acted
as a board, and not as a judicial  body; and after referring
to cases arising under the laws and constitution of the
United States, further said: "The process for summoning
jurors to attend in such cases may be a process for exercis-
ing the jurisdiction of the territoral courts when acting in
such cases as circuit and district courts of the United
States; but the making up of the list and all matters con-
nected with the designation of jurors are subject to the

regulation of territorial law; and this is especially true in cases arising not under any act of Congress, but exclusively, like the case in the record under the laws of the territory." The court plainly said that in all matters connected with the designation and selection of jurors and the making of the jury-list the selectmen and judge of probate, termed the 'County Court,' did not exercise judicial authority; that the members of that body acted as a board, and not as a judicial body. The court said, in substance, that the process for summoning jurors to attend in cases under the constitution and laws of the United States might be regarded as an exercise of the jurisdiction of the territorial courts when acting as circuit and district courts of the United States. And the court said, further, that the making of the jury-list and all matters connected with the designation of jurors were subject to regulation by territorial law, plainly indicating that the court meant to hold that matters within the jurisdiction of the territorial court, when acting as circuit and district courts of the United States, in cases arising under the laws thereof, were not subject to regulation by territorial law, but that matters not belonging to such jurisdiction were subject to such local laws when they were consistent with federal laws. In the concluding sentence of the quotation the court recognizes the distinction between cases arising under the laws of the United States and other cases. This opinion recognizes the binding effect of the provision of the organic act, which declares that the district courts of the territories shall have and exercise the same jurisdiction in all cases arising under the constitution and laws of the United States as is vested in the circuit and district courts thereof: *Hornbuckle* v. *Toombs,* 18 Wall., 648, was a civil action commenced in a district court of Montana. The only errors considered by the supreme court of the United States were based on the intermingling of legal and equitable remedies in one form of action. Referring to the sixth section of the organic act of Montana, wherein is provided that the supreme and district courts of that territory, respectively, should possess chancery as well as common law jurisdiction, and to some of the reasons for

and against exercising chancery and common law jurisdictions separately, and by distinct forms and modes of proceeding, the court said: "Be this, however, as it may, a consolidation of the two jurisdictions exists in many of the states, and must be considered as having been well known to Congress, and when the latter body, in the organic act, simply declares that certain territorial courts shall possess both jurisdictions, without prescribing how they shall be exercised, the passage by the territorial assembly of a code of practice which unites them in one form of action cannot be deemed repugnant to such organic act;" and also said that it was true "that the district courts of the territory are by the organic act invested with the same jurisdiction in all cases arising under the constitution and laws of the United States as is vested in the circuit and district courts of the United States, and a portion of each term is directed to be appropriated to the trial of such cases. Whether, when acting in this capacity, the said courts are to be governed by any of the regulations affecting the circuit and district courts of the United States, is not now the question." There is no intimation in this opinion that the district courts of the territory should not be governed in their jurisdiction in their practice in all cases arising under the laws of the United States by the rules of the circuit and district courts of the United States. In the case of *Reynolds* v. *U. S.*, 98 U. S., 145, the court said: "The indictment was found in the district court of the third judicial district of the territory. The act of Congress in relation to courts and judicial officers in the Territory of Utah, approved June 23, 1874, (18 St., 253,) while regulating the qualifications of jurors in the territory, and prescribing the mode of preparing the lists from which grand and petit jurors are to be drawn, as well as the manner of drawing, makes no provision in respect to the number of persons of which a grand jury shall consist. Section 808, Rev. St., requires that a grand jury, impaneled before any district or circuit court of the United States, shall consist of not less than sixteen nor more than twenty-three persons, while a statute of the territory limits the number in the district court of the territory to fifteen. The grand jury which

found this indictment consisted of only fifteen persons, and the question to be determined is whether the section of the Revised Statutes referred to, or the statute of the territory, governs the case." It was held that the district courts of the territory were not circuit and district courts of the United States, but were courts of the territory, invested for some purposes with the powers of the courts of the United States, and that section 808 was not designed to regulate the impaneling of grand juries in all courts where offenders against the laws of the United States could be tried, but only in the circuit and district courts, and that the territorial courts were left free to act in obedience to the requirements of the territorial laws, for the time being, in impaneling the jury. In support of its position the court cited *Clinton* v. *Englebrecht*, and *Hornbuckle* v. *Toombs*, *supra*. The former of these cases, as we have seen, holds that the county court, in selecting the jurors and making the jury-list, acts as a board and not as a court, and that such matters did not belong to the jurisdiction of the court. It may also be said that the fixing of the number of grand jurors does not belong to the jurisdiction of the court. The number is not determined by the courts, but the law determines the number. The court has no discretion to decide upon the number under the laws of the United States, or under the laws of the territory; and the latter case, referred to above, relates to the commingling of common-law and chancery jurisdiction. In the case of *Miles* v. *U. S.*, 103 U. S., 304, the court said: "It is insisted on behalf of the defendant in error that the excluded jurors were not qualified to sit in the case. In impaneling the jury the court was bound to follow the law of the territory on that subject," and cited *Clinton* v. *Englebrecht* and *Reynolds* v. *U. S.*, *supra*. The question related simply to the impaneling of the jury. The court simply followed the cases cited. The organic act and the laws of the United States contemplate that the same grand and petit juries shall serve in the district courts of this territory, in the trial of cases under the laws of the United States, as well as in cases under the laws of the territory. Section 4 of an act of Congress in force June 23,

1874, provides for the preparation of a jury-list and the drawing of jurors, and other federal laws provide for their qualification in some respects. The territorial legislature has also prescribed additional rules for the selection of and additional qualifications for jurors. This territorial law must be followed, so far as the law of the United States makes no express provision, in the selection of jurors, or the laws of the United States prescribing the qualifications of jurors in the circuit and district courts thereof must be followed. The supreme court has held that the territorial law must be observed. There was necessity for so holding, but no such necessity exists for following the territorial law in other respects in the trial of offenses against the United States. There can be no inconvenience or difficulty in observing, in federal cases the rules governing the right to separate trial in the circuit and district courts of the United States, and in observing, in territorial cases, the rules prescribed by the statutes of the territory.

I am of the opinion that section 262 of the Laws of Utah, *supra*, does not apply to cases in which two or more persons are indicted for offenses against the laws of the United States; that the district court of the territory, in granting separate trials in such cases, is governed by the rules of the circuit and district courts of the United States. But if it were conceded that section 262 did apply, then I would hold that there was no error in overruling the motion for a separate trial, because the offense for which the defendants were indicted was a misdemeanor. If it was not a felony, then the granting of a separate trial was in the discretion of the court. The offense of which the defendants were convicted is defined and punished by the laws of the United States. We must therefore look alone to these laws to ascertain its rank and grade; that is to say, the *status* of the crime must be determined by the laws of the United States. Tested by those laws, bribery of a deputy United States marshal is simply a misdemeanor. In the case of *U. S.* v. *Coppersmith*, 4 Fed. Rep., 198, Hammond, J., said: "But aside from this, nothing is better settled than that we cannot look to the state laws in the criminal jurisprudence of the United States for the char-

acteristic elements which go to make up an offense and enter into it as a part of its legal *status*; nor to the common law; nor even to the character of the punishment." The punishment for the offense was a fine not exceeding $1,000, and imprisonment at hard labor for a term that might extend to 10 years. The defendant claimed the right to challenge 10 jurors under section 819 of the Revised Statutes of the United States. It is as follows: "When the offense charged is treason or a capital offense, the defendant shall be entitled to twenty, and the United States to five, peremptory challenges. On the trial of any other felony the defendant shall be entitled to ten." The court held that the crime was not a felony, and allowed but three challenges; in other words, that the offense was a misdemeanor. All kinds of bribery are in this country, under our common law, merely misdemeanors. 2 Bish. Crim. Law, sec. 87. But it is said that section 1845, Comp. Laws Utah, 1876, declares that felony is a crime which is or may be punished with death, or by imprisonment in the penitentiary, and that every other crime is a misdemeanor. This provision must be held to refer to offenses defined by the territorial laws of Utah. The territorial legislature had no power to say whether a crime defined in the laws of the United States was a felony or a misdemeanor. There is no such crime as the one of which the defendant was convicted defined in the territorial laws. The United States confines in the penitentiary all persons convicted of crime under her laws in this territory, and sentenced to imprisonment. Persons convicted of contempt of court and other petty offenses against the laws of the United States are confined in the penitentiary of this territory. Yet no lawyer ever supposed that they were made felonies thereby.

In *Bank* v. *County of Yankton*, 101 U. S., 129, the court said: "The territories are but political subdivisions of the outlying dominion of the United States. Their relation to the general government is much the same as that which counties bear to the respective states. Congress may legislate for them as a state for its municipal organizations." No principle is better established in law than that

the municipal organizations in a state, such as counties or cities, have no authority to determine the rank, grade, or *status* of crimes defined in state laws. They cannot make a felony a misdemeanor or a misdemeanor a felony. If the federal government should declare a crime against its laws infamous, the territorial legislature would have no power to declare it otherwise; or if the federal government should not declare it so the territorial government could not say that it was infamous. And if Congress has not declared a crime against its laws a felony, the territorial legislature has no power to declare it so. The territorial law relied on provides that, when two or more defendants are jointly indicted for a felony, either of them so requiring it must be tried separately. It does not say that a separate trial shall be granted if the crime is punished by confinement in the penitentiary. The legislature must be presumed to have known the law of the United States, and if it had intended to give persons charged with misdemeanors under these laws a separate trial, as a matter of right, if the punishment was by confinement in the penitentiary, it would have said so. The crime is referred to by its name, its rank, not by the punishment. There is no uncertainty or ambiguity in the language, and there is no room for construction. The laws of the United States regard the offense of which the defendants were convicted as a misdemeanor, and we should so regard it. It is claimed, however, that the territorial law makes all offenses against its laws felonies that may be punished by imprisonment in the penitentiary, and that, inasmuch as the misdemeanor with which the defendant was charged was punishable by imprisonment in the penitentiary it should be regarded as a felony; that to so regard it would be in harmony with the spirit of the territorial statute. The case in hand being a misdemeanor already, it does not come within the terms of that provision of section 262, *supra*, which declares that two or more persons indicted for a felony shall be entitled to a separate trial, as a matter of right; but it is plainly within the terms of the provision of the same section which declares that in other cases the defendants jointly indicted may be tried

separately or jointly, in the discretion of the court. The language is so definite and certain that there is left no room for construction. In holding that the right to a separate trial was within the sound discretion of the court, the the court followed the letter of the territorial statute as well as the common-law rule, and the rule controlling in all cases under the laws of the United States tried in its courts. Can any rule of interpretation or construction be found authorizing the court to disregard the plain letter of the territorial law, the letter and spirit of the common law, and the rule applied in the trial of offenses under the federal laws in all other courts? Whether we apply the common law rule, or the rule applicable in the trial of United States cases in the courts thereof, or the territorial law, we reach the same conclusion—that the granting of separate trials to defendants was within the sound discretion of the court.