The CHIEF JUSTICE
 

 delivered the opinion of the court.
 

 It is plain that the jury was not selected or summoned in pursuance of the statute of the Territory. That statute was, on the contrary, wholly and purposely disregarded, and the controlling question raised by the challenge to the array is, whether the law of the Territorial legislature, prescribing the mode of obtaining panels of grand and petit jurors, is obligatory upon the District Courts of the Territory.
 

 It was insisted in argument that the challenge to the array was waived by the defendants through the exercise of their right to challenge peremptorily and for cause; and we were referred to the judgment of the Supreme Court of New York, in the case of
 
 The People
 
 v.
 
 McKay,
 

 ‡
 

 as an authority
 
 *441
 
 for this proposition. But that case appears to be an authority for the opposite conclusion. “We are not of opinion,” says the court, “that the prisoner’s peremptory challenge of jurors was a waiver of his right to object now to the want of a venire.” In that case there had been no venire, but the jury had been summoned in a mode not warranted by law. In the case before us there was a
 
 venire,
 
 but if it was not authorized by law it was a nullity; and we are not prepared to say that the efforts of the defendants to secure as far as they could, by peremptory challenges and challenges for cause, a fair trial of their case, waived an inherent and fatal objection to the entire panel.
 

 We are, therefore, obliged to consider the question whether the District Court, in the selection and summoning of jurors, was bound to conform to the law of the Territory.
 

 The theory upon which the various governments for portions of the territory of the United States have been organized, has ever been that of leaving to the inhabitants all the powers of self-government consistent with the supremacy and supervision of National authority, and w’ith certain fundamental principles established by Congress. As early as 1784 an ordinance was adopted by the Congress of the Confederation providing for the division of all the territory ceded or to be ceded, into States, with boundaries ascertained by the ordinance. These States were severally authorized to adopt for their temporary government the constitution and laws of any one of the States, and provision was made for their ultimate admission by delegates into the Congress of the United States. We thus find the first plan for the establishment of governments in the Territories, authorized the adoption of State governments from the start, and committed all matters of internal legislation to the discretion of the inhabitants, unrestricted otherwise than by the State constitution originally adopted by them.
 

 This ordinance, applying to all Territories ceded or to be ceded, was superseded three years later by the Ordinance of 1787, restricted in its application to the territory northwest
 
 *442
 
 of the river Ohio—the only territory which had then been actually ceded to the United States.
 

 It provided for the appointment of the governor and three judges of the court, who are authorized to adopt, for ,the temporary government of the district, such laws of the original States as might be adapted to its circumstances. But, as soon as the number of adult male inhabitants should amount to five thousand, they were authorized to elect representatives to a house of representatives, who were required to nominate ten persons from whom Congress should select five to constitute a legislative council; and the house and the council thus selected and appointed were thenceforth to constitute the legislature of the Territory, which was authorized to elect a delegate in Congress with the-right of debating, but not of voting. This legislature, subject-to the negative of the governor and certain fundamental principles and provisions embodied in articles of compact, was clothed with the full power of legislation for the Territory.
 

 The Territories south of the Ohio, in 1790;
 
 *
 
 of Mississippi, in 1798;
 
 †
 
 of Indiana, in 1800 ;
 
 ‡
 
 of Michigan, in 1805 ;
 
 §
 
 of Illinois, in 1809 ;
 
 ǁ
 
 were organized upon the same plan, except that the prohibition of slavery, embodied in the Ordinance of 1787, was not embraced among the fundamental provisions in the organization of the Territories south of the Ohio; and the people in the Territories of Michigan, Indiana, and Illinois were authorized to form a legislative assembly, as soon as they should see fit, without waiting for a population of five thousand adult males.
 

 Upon the acquisition of the foreign territory of Louisiana, in 1803, the plan for the organization of the government was somewhat changed. The governor and council of the Territory of Orleans, which afterwards became the State of Louisiana, were appointed by the President, but were invested with full legislative powers, except as specially limited. A District Court of the United States distinct from
 
 *443
 
 the courts of the Territory was instituted.
 
 *
 
 The rest of the Territory was called the District of Louisiana, and was placed under the government of the governor and judges óf Indiana.
 
 †
 

 Jurisdiction of cases in which the United States were concerned, subject to appeal to the Supreme Court of the United States, was for the first time expressly given to a Territorial court in 1805.
 
 ‡
 
 The Territory of Missouri was organized in 1812,
 
 §
 
 and upon the same plan as the Territories acquired by cessions of the States. In the act for the government of this Territory appears for the first time a provision concerning the qualifications of jurors. The 16th section of the act provided that all free white male adults, not disqualified by any legal proceeding, should be qualified as grand and petit jurors in the courts of the Territory, and should be selected, until the General Assembly should otherwise direct, in such manner as the courts should prescribe.
 

 The Territory of Alabama,,in 1817,
 
 ǁ
 
 was formed out of the Mississippi Territory, and upon the same plan. The Superior Court of the Territory was clothed with the Federal jurisdiction given by the act of 1805. The Territory of Arkansas was organized in 1819,
 
 ¶
 
 in the southern part of Missouri Territory. The powers of the government were distributed as executive, legislative, and judicial, and vested respectively in the governor, General Assembly, and the courts. The governor and judges of the Superior Court were to be appointed by the President, and the governor was to exercise the legislative powers until the organization of the General Assembly. The act for the organization of the Territorial government of Florida made the same distribution of the powers of the government as was made in the Territory of Arkansas, and contained the same provision in regard to jurors as the act for the Territorial government of Missouri.
 

 In all the Territories full power was given to the legisla
 
 *444
 
 ture over all ordinary subjects of legislation. The terms in which it was granted were various, but the import was the same in all.
 

 Except in the acts relating to Missouri and Arkansas, no power was given to the courts in respect to jurors, and the limitation of this power until the organization of the General Assembly indicates very clearly that, after such organization, the whole power in relation to jurors was to be exercised by that body.
 

 In 1886 the Territory of "Wisconsin was organized under an act, which seems to have received full consideration, and from which all subsequent acts for the organization of Territories have been copied, with few and inconsiderable variations. Except those in the Kansas and Nebraska acts in relation to slavery, and some others growing out of local circumstances, they all contained the same provisions in regard to the legislature and the legislative authority, and to the judiciary and the judicial authority, as the act organizing the Territory of Utah. In no one of them is there any provision in relation to jurors.
 

 The language of the section conferring the legislative authority in each of these acts is this:
 

 “The legislative power of said Territory shall extend to all rightful subjects of legislation, consistent with the Constitution of the United States, and the provisions of this act; but no law shall be passed interfering with the primary disposal of the soil. No tax shall be imposed upon the property of the United States, nor shall the lands or other property of non-residents be taxed higher than the lands or other property of residents.”
 

 As there is no provision relating to the selection of jurors in the constitution, or the organic act, it cannot be said that any legislation upon this subject is inconsistent with either. The method of procuring jurors for the trial of cases is therefore a rightful subject of legislation, and the whole matter of selecting, impanelling, and summoning jurors is left to the Territorial legislature.
 

 The action of the legislatures of all the Territories has
 
 *445
 
 been in conformity with this construction. In the laws of everj’one of them from that organized under the Ordinance of 1787 to the Territory of Montana are found acts upon this subject.
 
 *
 
 And it is worth while to remark that in three of the Territories, Nevada, New Mexico, and Idaho, the judge of the probate has been associated with other officials in the selection of the lists for the different counties.
 

 This uniformity of construction by so many Territorial legislatures of the organic acts in relation to their legislative authority, especially when taken in connection with the fact that none of these jury laws have been disapproved by Congress, though any of them would be annulled by such disapproval, confirms the opinion, warranted by the plain language of the organic act itself, that the whole subject-matter of jurors in the Territories is committed to Territorial regulation.
 

 If this opinion needed additional confirmation it would be found in the Judiciary Act of 1789. The regulations of that act in regard to the selection of jurors have no reference whatever to Territories. They were framed with reference to the States, and cannot, without violence to rules of construction, be made to apply to Territories of the United States. If, then, this subject were not regulated by Territorial law, it would be difficult to say that the selection of jurors had been provided for at all in the Territories.
 

 It is insisted, however, that the jury law of Utah is defective in two material particulars: First, that it requires the jury lists to be selected by the county court, upon which the organic law did not permit authority for that purpose to be conferred: Second, that it requires the jurors to be summoned by the Territorial marshal, who was elected by the
 
 *446
 
 legislature, and not appointed by the governor. We do not perceive how these facts, if truly alleged, would make the mode actually adopted for summoning the jury in this case, legal. But we will examine the objections.
 

 In the first place we observe that the law has received the implied sanction of Congress. It was adopted in 1859. It has been upon the statute-book for more than twelve years. It must have been transmitted to Congress soon after it was enacted, for it was the duty of the secretary of the Territory to transmit to that body copies of all laws, on or before the 1st of the next December in each year. Thb simple disapproval by Congress at any time, would have annulled it. It is no unreasonable inference, therefore, that it was approved by that body.
 

 In the next place, we are of opinion, that the making of the jury lists by the county courts was not a judicial act. Conceding, that it was not in the- power of the Territorial legislature to confer judicial authority upon any other courts than those authorized by the organic law, and that it was not within its competency to organize county courts for the administration of justice, we cannot doubt the right of the Territorial legislature to associate select men with the judge of probate, and to call the body thus organized, a county court, and to require it to make lists of persons qualified to serve as jurors. In making the selection, its members acted as a board, and not as a judicial bodj'.
 

 Nor do we think the other objection sound, viz.: That the required participation of the Territorial marshal in summoning jurors invalidated his acts, because he was elected by the legislature, and not appointed by the governor. He acted as Territorial marshal under color of authority, and if he was not legally such, his acts cannot be questioned indirectly.
 

 But, we repeat, that the alleged defects of the Utah jury law are not here in question. What we are. to pass upon is the legality of the mode actually adopted for impanelling the jury in this ease. If the court had no authority to adopt that mode, the challenge to the array was well taken, and should have been allowed.
 

 
 *447
 
 Acting upon the theory that the Supreme and District Courts of the Territory were courts of the United States, and that they were governed in the selection of jurors by the acts of Congress, the District Court summoned the jury in.this ease by an open
 
 venire.
 
 We need not pause to inquire whether this mode was in pursuance of any act of Congress, for, if such act was not intended to regulate the procuring of jurors in the Territory, it has no application to the case before us. We are of opinion that the court erred both in its theory and in its action.
 

 The judges of the Supreme Court of the Territory are appointed by the President under the act of Congress, but this does not make the courts they are authorized to hold courts of the United States. This was decided long since in
 
 The American Insurance Company
 
 v.
 
 Canter,
 

 *
 

 and in the later case of
 
 Benner
 
 v. Porter.
 
 †
 
 There is nothing in the Constitution which would prevent Congress from conferring the jurisdiction which they exercise, if the judges were elected by the people of the Territory, and commissioned by the governor. They might be clothed with the same authority to decide all cases arising under the Constitution and laws of the United States, subject to the same revision. Indeed, it can hardly be supposed that the earliest Territorial courts did not decide such questions, although there was no express provision to that effect, as we have already seen, until a comparatively recent period.
 

 There is no Supreme Court of the United States, nor is there any District Court of the United States, in the sense of the Constitution, in the Territory of Utah. The judges are not appointed for the same terms, nor is the jurisdiction which they exercise part of the judicial power conferred by the Constitution or the General government. The courts are the legislative courts of the Territory, created in virtue of the clause which authorizes Congress to make all needful rules and regulations respecting the Territories belonging to the United States.
 
 ‡
 

 
 *448
 
 The Supreme Court of the Territory was doubtless misled by the inadvertent use of the words “ marshal of the District Court of the United States for the Territory of Oregon ” in the organic law. This act defines the duties, liabilities, and fees of the marshal for the Territory by reference to those of the marshal of the District Court of the United States for the Territory of Oregon. On reference to the act organizing that Territory, we find that the duties of the marshal were to be the same as those of the marshal for the District Court of the United States for the Territory of Wisconsin. On reference to the act organizing the last-named Territory, the duties, liabilities, and fees of the marshal were described to be the same as those of the “ marshal of the District Court of the United States for the Northern District of New York.” Hence, the words “ marshal of the District Court of the United States ” have crept into the various acts organizing these Territories. But the description of the court which was proper in a State would be improper in a Territory.
 

 The organic act authorized the appointment of an attorney and a marshal for the Territory, who may properly enough be called the attorney and marshal of the United States for the Territory; for their duties in the courts have exclusive relation to cases arising under the laws and Constitution of the United States. -
 

 The process for summoning jurors to attend in such cases may be a process for exercising the jurisdiction of the Territorial courts when acting, in such cases, as Circuit and District Courts of the United States; but the making up of the lists and all matters connected with the designation of jurors are subject to the regulation of Territorial law. And this is especially true in cases arising, not under any act of Congress, but exclusively, like the case in the record, under the laws of the Territory.
 

 There is nothing in this opinion inconsistent with the cases of
 
 Orchard
 
 v. Hughes,
 
 *
 
 or of
 
 Hunt
 
 v. Palao,
 
 †
 
 properly
 
 *449
 
 understood. The first of these cases went upon the ground that the chancery jurisdiction conferred upon the courts of the Territories by the organic act was beyond the reach of Territorial legislation; and the second, in which the Territorial Court of Appeals was called a court of the United States, was only intended to distinguish it from a State court.
 

 Upon the whole, we are of opinion that the jury in this case was not selected and summoned in conformity with law, and that the challenge to the array should have been allowed. This opinion makes it unnecessary to consider the other questions in the case.
 

 Judgment reversed.
 

 ‡
 

 18 Johnson, 217.
 

 *
 

 1 Stat. at Large, 123.
 

 †
 

 lb. 549.
 

 ‡
 

 2 Id. 58.
 

 §
 

 lb. 309.
 

 ǁ
 

 lb. 514.
 

 *
 

 2 Stat. at Large, 283.
 

 †
 

 lb. 287.
 

 ‡
 

 lb. 338.
 

 §
 

 lb. 743.
 

 ǁ
 

 3 Id. 371.
 

 ¶
 

 lb. 493.
 

 *
 

 Wisconsin, organized April 20th, 1836, 5 Stat. at Large, 10; Iowa, June 12th, 1838, lb. 235; Oregon, August 14th, 1848,9 Id. 323; Minnesota, March 3d, 1849, lb. 403; New Mexico, September 9th, 1850, lb. 446; Utah, September 9th, 1850, lb. 453; Nebraska, May 30th, 1854, 10 Id. 277; Kansas, May 30th, 1854, lb. 277; Washington, March 2d, 1853, lb. 172; Colorado, February 28th, 1861, 12 Id. 172; Nevada, March 2d, 1861, lb. 209; Dakota March 2d, 1861, lb. 239; Arizona, February 24th, 1863, lb. 664; Idaho, March 3d, 1863, lb. 808 ; Montana, May 26th, 1864, 13 Id. 85.
 

 *
 

 1 Peters, 546.
 

 †
 

 9 Howard, 235.
 

 ‡
 

 American Insurance Company
 
 v.
 
 Canter, 1 Peters, 545.
 

 *
 

 1 Wallace, 73.
 

 †
 

 4
 
 Howard, 589.