## C. E. MACKEY, APPELLANT, *v.* FRANK ENZEN- SPERGER, RESPONDENT.[1]

CONSTITUTIONAL LAW.—JURY TRIAL.—UNANIMITY OF VERDICT.—
Session Laws 1892, c. 44, amending section 3371, 2 Comp.
Laws 1888, permitting a verdict of a jury in civil cases upon
the concurrence therein of nine or more members thereof, is
not in conflict with Art. 7 of Amendments to the Constitution
of the United States, providing that in suits at common law
where the value in controversy shall exceed $20, the right of
trial by jury shall be preserved. *Hess* v. *White*, 9 Utah, 61,
followed. King, J., *dissenting.*

(No. 525.  Decided Feb. 23, 1895.  39 P. R. 541.)

APPEAL from the District Court of the Third Judicial
District.  Hon. Charles S. Zane, *Judge.*

Action by C. E. Mackey against Frank Enzensperger.
There was a verdict for the defendant, and from a judg-
ment dismissing the complaint, plaintiff appeals.  *Affirmed.*

[The court has followed the ruling in *Hess* v. *White*,
in *Publishing Co.* v. *Brewing Co.*, 10 Utah, 147; *Tucker*
v. *Salt Lake City*, Id. 173; *Wolf Co.* v. *Brewing Co.*, Id.
179; *Riley* v. *Rapid Transit Co.*, Id. 428.  The case of
*Publishing Co.* v. *Brewing Co.*, is now on appeal to the
supreme court of the United States and the decision of
that court upon this question is awaited with much
interest.—REP.]

*Messrs. Booth, Lee & Gray*, for appellant.

---

[1] [See note to *Jacksonville,· etc., Ry. Co.* v. *Adams*, 24 L. R. A.
272 for a full discussion of the constitutionality of verdict by less
than all the jurors.—REP.]

*Messrs. Powers & Hiles,* for respondent.

BARTCH, J.:

The plaintiff brought this action to recover upon a judgment for $1,763.77, obtained against the defendant in the state of Colorado, which judgment the plaintiff claims has never been paid. The defendant, in his answer, has set up full payment and satisfaction. The jury, by a verdict, concurred in by nine of their number, found the issues for the defendant, and the court entered judgment thereon, dismissing the plaintiff's complaint, and for costs in favor of the defendant. From this action of the court the plaintiff appealed, and the sole question raised is whether a verdict, being concurred in by less than 12 jurors, as provided by the act of the territorial legislature, approved March 10, 1892, will support a judgment.

This question was decided in the affirmative by this court in the case of *Hess* v. *White,* 9 Utah, 61, 33 Pac. 243, and the ruling in that case has been followed in several other cases; but counsel for the appellant have cited us to several decisions of other appellate courts, made since the decision of *Hess* v. *White,* wherein the contrary view was adopted. We have examined the recent cases cited, but the reasoning of those decisions is not such as to warrant a departure from the doctrine enunciated in *Hess* v. *White.* The judgment is affirmed.

SMITH, J., concurs.

KING, J. (*dissenting*):

Very reluctantly do I withhold my assent from the opinion of the majority of the court in this case. This reluctance results from the fact that the point involved has been adjudicated by this court, and, if the doctrine of *stare*

*decisis* is to have force and recognition, it would seem that there would be no ground for dissent. But the case of *Hess v. White*, 9 Utah, 61, 33 Pac. 243, which is followed, and upon which is founded the opinion of the majority of the court in this case, has not been passed upon by the supreme court of the United States, and several cases involving the same question are now on appeal before that court. If the question presented in this case had been passed upon by the highest judicial tribunal, and the validity of the legislative enactment upheld, there would be not only no justification for a dissenting view, but, upon the contrary, a duty and stern injunction would rest upon every member of the court to acquiesce in the determination. Perhaps the judgment of this court, announced in the case of *Hess* v. *White,* above cited, may be affirmed by the supreme court of the United States. Indeed, it would not be surprising if this court were sustained, when from expressions employed by that tribunal, and particularly in the case of *Hurtardo* v. *California,* 110 U. S. 516, 4 Sup. Ct. 111, 292, the inference is clearly deducible, that the common law is viewed as a shoreless sea, and the constitution considered so flexible, and as possessing such "capacity for growth and adaptation to an undefined and expanding future, that it will draw its inspiration from every fountain of justice" (which it is asserted is inexhaustible), and receive the "best ideas of all systems and of every age," regardless of the limitations and constitutional restrictions placed by the fathers as safeguards of human liberty.

This panegyric of Justice Matthews upon the common law and Magna Charta, and his poetic reference to the well-nigh illimitable power of legislative bodies to enact laws that they may deem "just and reasonable expressions of the public will," are approved by this court in *Hess* v. *White;* and because of these views, and the further reason

that "society progresses, and modes and legal procedure must change with the progress, and because it is calculated to be a great benefit to all classes of litigants, because it reaches justly and fairly and impartially all classes of men," the act of the legislative assembly of Utah passed in 1892, changing the then existing law requiring a unanimous verdict of 12 jurors in civil cases, and providing that in "all civil cases a verdict may be rendered on the concurrence therein of nine or more members of the jury," was declared to be valid. Upon two grounds only, it would seem, is there the slightest foundation upon which to uphold this legislative enactment, namely: *First.* That it is demanded by the progress of the age and the growth of civilization, and that the "administration and remedial proceedings ever change from time to time, with the advancement of legal science and the progress of society," regardless of limitations upon legislative and judicial will; in other words, that whatever is deemed to be just and reasonable and for the public good can be crystallized into law, and is of such importance as to rise above organic and constitutional limitations upon which governments may be founded. *Second.* That the restrictions upon the federal government, including the seventh amendment to the constitution of the United States, do not apply to territories, and that the seventeenth section of the organic act, and section 1891 of the Revised Statutes of the United States, extend to the territory of Utah only those provisions of the constitution which are inhibitions upon the states, and not those provisions which are restrictions of the federal government. Upon the first ground the case of *Hess* v. *White* is placed. The opinion of the court seems to be a concession that the territorial enactment is in violation of the sections of the organic act and of the Revised Statutes just referred to, but pleads that the legislation is justifiable upon the higher ground that it is a

"just and reasonable expression of the public will, and because it is only claimed to be an infringement of the broad and general statements in the constitution which ought not to be so narrowly construed as to be a bulwark against progress." To those who look to the constitution for the limitations upon the federal government, and who regard restrictions therein contained as an indissoluble part of the constitution, and who believe that the fundamental law is clearly expressed, cannot be abrogated or construed away, because it is thought the demands of a progressive present and a still more enlightened future will be best subserved, this position will not only be untenable, but regarded as fraught with danger to free government. Upon the second ground the validity of the act in question could best be placed, because it is possible to distort the language of the sections above referred to and the constitution so that they will be susceptible to the interpretation that only that portion of the constitution which places limitations upon the states is applicable to the territories.

The seventh amendment to the constitution provides " that in suits at common law, where the value of the controversy exceeds $20, the right of trial by jury shall be preserved." The question is, does this provision extend to the territory of Utah? The concession must be made at the outset that it has been decided many times that territorial courts are not courts of the United States, and that the former are not within the contemplation of the constitution. In discussing the powers of congress as to territorial government, Mr. Story says: " What shall be the form of government established in the territories depends exclusively upon the discretion of congress. Having a right to erect a territorial government, they may confer on it such powers, legislative, judicial, and executive, as they may deem best. They may confer upon it general legislative powers, subject only to the laws and con-

stitution of the United States.  If the power to create courts is given to the territorial legislature, those courts are to be deemed strictly territorial, and in no just sense constitutional courts, in which the judicial power conferred by the constitution can be deposited.  They are incapable of receiving it.  They are legislative courts, created in virtue of the general right of sovereignty of government, or in virtue of that clause which enables congress to make all needful rules and regulations respecting the territories of the United States." See *Insurance Co.* v. *Canter*, 1 Pet. 511; *Benner* v. *Porter*, 9 How. 235; *Clinton* v. *Englebrecht*, 13 Wall. 434.  It would seem, in the light of numerous decisions of the supreme court, that if the provision contained in the seventh amendment has not been extended by congressional legislation over the territory, then the act in question is not subject to the objection that it is unconstitutional, although it leads to the anomalous position that congress can authorize an inferior legislative body to do that which it cannot do.  But section 17 of the organic act creating the territorial government of Utah provides " that the constitution and laws of the United States are hereby extended over and declared to be in force in said territory of Utah, so far as the same or any provision thereof may be applicable;" and section 1891 of the Revised Statutes of the United States contains this provision:  " The constitution of the United States and all the laws which are not locally inapplicable, shall have the same force and effect within all the organized territories, and any other territory hereafter organized, as elsewhere in the United States."

Let us first inquire what is meant by the words, "suits at common law," as used in the seventh amendment. The supreme court of the United States aver, substantially, in the cases of *Parsons* v. *Bedford*, 3 Pet. 443, and *Waring* v. *Clark*, 5 How. 451, that the intention was

to confine this application of this amendment to common-law suits of a civil nature, in which a jury, by the rules of the common law, constitute an element of the trial. It embraces all suits which are not of equity and admiralty jurisdiction, whatever may be the particular form which they may assume to settle legal rights. The clause is used in contradistinction to equity and admiralty and maritime jurisdiction. The constitution, as it came from the hands of the framers, failed to contain this provision, which has been so earnestly contended for wherever the Anglo-Saxon race has gone; and not until those amendments were incorporated within it, which are the shield to personal rights, was opposition to the constitution silenced. As stated by Judge Story in *Parsons* v. *Bedford,* *supra:* "One of the strongest objections originally taken against the constitution of the United States was the want of an express provision securing the right of trial by jury in civil actions." It is not important to enter upon any investigation of the history of the right of trial by jury. Just where it had its origin is involved in mystery; But, whatever was its origin, the right of trial by jury of 12 men became fixed centuries ago in the common law, and unanimity of verdict became requisite, until, wherever the Anglo-Saxon tongue was spoken, and in many other countries, this right came to be regarded as the great bulwark of the liberty of the citizen, and, whether charged with an offense against the commonwealth or in a controversy with another, the right could always be invoked. When separated from the mother country, we regarded it as a birthright, and have been jealous of any attempted innovation upon the system. In adopting a constitution for our government and guidance, our fathers had in mind the great charters of English liberty; and the right of trial by jury, as it was understood at common law, was not the least of these rights.

It may be proper at this point to inquire what is meant by a jury at common law. Sir Matthew Hale says (2 Hale, P. C. 161): "But in case of a trial by a petit jury, it can be no more nor less than twelve." And at page 296 he says: "If only eleven be sworn by mistake, no verdict can be taken by the eleven, and, if it be, it is error." Judge Cooley, speaking for the court, in *Tabor* v. *Cook*, 15 Mich. 32 , construes the words, "the right of trial by jury shall remain," found in the state constitution. He says: "The intention here is plain to preserve to the parties the right to have their controversies tried by a jury in all cases where the right then existed, and suitors cannot constitutionally be deprived of this right, except where in civil cases, they waive it by failing to demand it in some mode which the legislature shall prescribe." The same eminent jurist, in *Van Sickle* v. *Kellogg*, 19 Mich. 49, says: "The constitutional principle which underlies the right is one to which the people governed by the common law have clung with perhaps more tenacity than any other and they have justly regarded it as not preserving simply one form of investigating the facts in preference to another, where both would have attained the same results, but as securing the mode of trial which was best calculated to insure a correct result, and to secure the citizen against usurpation of authority, and against arbitrary and prejudiced action on the part of single individuals who chanced to be possessed of judicial power." Mr. Justice Campbell, in the case of *Paul* v. *Detroit*, 32 Mich. 108, speaking of the constitution of Michigan, which provided for jury trial, states, in effect, that the term "'jury' includes all the safeguards of unanimity, and a verdict of twelve, and no action by law, or by proceedings under them, can be maintained, if any of these securities are impaired or disregarded." "'Trial by jury,' as the words are used in the

constitution, had at the time of the adoption a fixed legal signification, and from time immemorial has meant a trial by a tribunal of twelve men, acting only upon a unanimous determination.    The origin of this mode of trial is lost in the dimness of the past, but from the earliest period down to the adoption of. the constitution, unanimity of twelve jurors alone has constituted a verdict.    If the legislative assembly could dispense with one attribute or es_ sential of a verdict, it could as well destroy the other, or repeal the right altogether.ʻ  It can do neither.ʼʼ    *Kleinschmidt* v. *Dunphy*, 1 Mont. 103; *Reese* v. *Knott*, 3 Utah, 454, 24 Pac. 757.

Whenever a jury is mentioned in our organic laws, the term is understood to have reference to it as constituted at common law, unless the contrary plainly appears.    Such is the construction uniformly put upon the provisions common in the constitutions of the several states, that the right of trial by jury shall remain inviolate; and a common-law jury imports a jury of 12 men, whose verdict must be unanimous to be legal.    Such must be its acceptation to every one acquainted with the history of the common law, and aware of the high estimation in which that institution so constituted has for so long a period been held. *Cancemi* v. *People*, 18 N. Y. 128; *May* v. *Railroad Co.*, 3 Wis. 219; *Cruger* v. *Railroad Co.*, 12 N. Y. 198; 10 Bac. Abr. pp. 306, 315; 3 Bl. Comm. 352, 376; Cooley Const. Lim. 319; Reeve, Eng. Law, 241; *McRae* v. *Railroad Co.* (Mich.) 53 N. W. 561; Thomp. & Mer. Jur. 6; *Kent* v. *Perkins*, 36 Ohio St. 639; Opinion of Justices, 41 N. H. 550; *Copp* v. *Henniker*, 20 Am. Rep. 194.    Where words used in common law are contained in a statute or the constitution without an explanation of the sense in which they are employed, they should receive the construction which has been affixed to them by the common

law. *Carpenter* v. *State*, 34 Am. Dec. 116. It is clear that the case at bar would come within the category of "suits at common law," and it is equally incontestable that the number of the jury at common law could never be less than 12, and that all the jurors must concur in order to authorize a verdict. Mr. Justice Miller, in his work upon the constitution of the United States, in referring to the seventh amendment, says: "The first thing to be observed of this article is that it prescribes the mode of trial in suits at common law. It does not use the same words as the clause extending the judicial power to all cases in law and equity. It is to be inferred, therefore, that trial by jury, as imposed by the constitution, has relation to the common law as it was understood in England, and to the right to such trial in the class of cases." Miller, Const. U. S. 492.

From the foregoing it would seem that this great right of trial by jury, as it was understood at common law, has been preserved to all persons in the courts of the federal government, and that there could be no question regarding the essentials of a common-law jury. If Congress cannot deprive a person of this right, the inquiry is pertinent whether it can delegate to a legislative body of its creation authority to do that which it is prohibited from doing. And it is worthy of note in passing, that, while Congress has recognized that courts of the territories are "territorial courts," as distinguished from "constitutional courts," all legislation emanating from it touching the question of jury trial seems to have been upon the theory that the jury as known to the common law was an indefeasible right, and ingrafted upon our territorial system. No congressional legislation upon the question affecting the territories has gone beyond constitutional limitations. It is strange, if the limitations upon the federal government are not interdictions upon the power of Congress in its legis-

lation for the territories. There has been no law passed by Congress abridging the common-law right of trial by jury.

What is meant by the seventeenth section of the organic act of this territory, which reads "that the constitution and laws of the United States are hereby extended over and declared to be in force in said territory of Utah, so far as the same or other provisions thereof may be applicable"? Can it be contended that the seventh amendment of the constitution is inapplicable to the people of the territory of Utah? If it is an inestimable blessing to possess the right of trial by jury, and was considered of so great importance by the fathers of our country, can it be said that the passage of a century has robbed it of its beneficent character? If it is admitted that the seventh amendment is extended to the territory, the act of the legislature is unconstitutional. Can it be consistently argued that the words extending the constitution over the territory meant that only that portion is extended which is applicable to the states, and that territories are placed upon the same footing as states? The language is: "The constitution and laws of the United States are extended," etc.; not a portion of the constitution, not that part which is an interdiction upon the states. This language can only mean that all the constitution, including the amendments which are applicable, is extended over and is in force in the territory. Surely, the trial by jury, which, as Judge Story says in *Parsons* v. *Bedford*, *supra*, "is justly dear to the American people, and has always been an object of deep interest and solicitude, so that every encroachment has been watched with great jealousy," is not only applicable, but a part of our jurisprudence and civilization.

Many of the inhibitions upon the states prescribed in the constitution are not applicable to the territory. If this view be taken, that only restrictions upon the states are

extended to the territories, it would give the territories almost unlimited power in respect to legislation. The states, before being admitted to the Union, have submitted to Congress constitutions, which have been scrutinized, and which are presumed to preserve the rights and liberties of the people. If there are no restrictions upon the territories, except such as are imposed upon the states by the federal constitution, and such as are found in the organic act, which are of the most general character, they possess, under this view, almost limitless power. If this reasoning be correct, the territory could abridge the freedom of speech, destroy religious liberty, and abolish the right of trial by jury. It must be conceded that, unless the section of the organic act referred to makes the seventh amendment in force within the territory, there is nothing in the organic act which would in any manner restrain the legislature from abolishing jury trial. If the legislature can pass an act providing that a jury of nine may return a verdict, unquestionably power exists in it to dispense entirely with the system. If the territory stands in the same relation to the federal constitution as the states, and the limitations upon the federal government are not extended to it, it can establish a state religion, infringe the rights of the people to keep and bear arms, quarter in times of peace soldiers in private houses without consent, issue warrants without reasonable cause, subject a person to be twice put in jeopardy for the same offense, compel one to testify in a criminal case against himself, and deprive one of life, liberty, and property without due process of law, take private property without just compensation, deprive a person of a speedy trial and an impartial jury, and refuse to confront him with witnesses against him, deny trial, and inflict cruel and unusual punishments. Can it be possible, in organizing this territory, Congress designed to place within its hands such unrestrained power?

But it is contended that the sixth section of the organic act is such a check upon the legislature as to amount to a prohibition upon wrongful legislation. It reads: "That the legislative power of said territory shall extend to all rightful subjects of legislation, consistent with the constitution of the United States, and the provisions of this act." But, under the view above expressed, the words, "consistent with the constitution of the United States," have reference only to the inhibitions upon the states as found in article 10 of the amendments to the constitution; so that, if there is anything to prohibit wrongful enactments and legislation conflicting with the amendments to the constitution, it must be found in the words, "rightful subjects of legislation." "Right" and "wrong" are relative terms. An act of omission may be *malum in se* or *malum prohibitum*. To many persons the jury system is obnoxious; they would abolish it. With some the establishment of a state religion would be an exercise of legislative power upon a "rightful subject." Manifestly, these words of Congress are meaningless, unless anchored to some fundamental law. But such an interpretation of this section is erroneous. The natural reading of it harmonizes with the other sections quoted from the organic act, when the construction is placed upon it, that the constitution and the laws of Congress are the criterion by which to test local legislation, and determine whether it is "rightful." It means that the restrictions imposed by the constitution, and which determine whether or not a matter is a "rightful subject of legislation," are imposed upon the territory, and that such legislation by the latter, consistent with the constitution and the laws of Congress, would be "rightful" and valid. Construe the sections together bearing upon the powers of the territory, and there is not the slightest ambiguity. So construed, they clearly state that the constitution, and especially those

general and fundamental principles underlying personal liberty, and the laws of Congress passed in pursuance of it are "extended over and declared to be in force in the territory," and all local legislation must be consistent therewith, or it will be invalid, not being a rightful subject of legislation.

But, recurring to the seventeenth section of the organic act and section 1891 of the Revised Statutes, what laws are extended over the territory? To this question there can be but one answer, viz., such as are the legitimate offspring of the constitutional power of Congress. Then, if the laws of Congress enacted in virtue of the federal limitations in the constitution are the ones referred to, it must follow as "the night the day" that that same portion of the constitution which is the source of the authority for those enactments is what is extended to the territory, and none other. And section 1891, above referred to, re-affirms the legislative will, and gives the constitution and laws of Congress the same force in the territory as "else-where in the United States." Federal enactments do not extend to subjects over which the states have full and unlimited power. So the meaning is clear that the laws "not locally inapplicable shall have the same force and effect as elsewhere in the United States" are such as are originated under the authority conferred upon Congress. The laws which Congress passes, the sections of the constitution which justify them, these are extended to the territory by the words above quoted. By some it is admitted that section 17 of the organic act does extend the seventh amendment to the territory, but they contend that the words, "as elsewhere in the United States," found in section 1891, indicate an intention upon the part of Congress to amend section 17, and that they repeal the portion of the organic act extending the federal constitution over the territory, and bestow in lieu thereof upon the territory

those features of the constitution only which are regarded as limitations upon the states. The language is not susceptible of this construction. It is juggling with words, ignoring grammatical rules of construction, and violating the canons of legal construction to place any other interpretation upon these sections than that which is contended for herein. It seems to me to be beyond cavil that the seventh amendment is in force within the territory, and limits territorial legislation. If so, any act abridging the right of trial by jury, dispensing with the common-law jury as above defined, is unconstitutional and void. The same view has been taken by the supreme court of Montana in the case of *Kleinschmidt v. Dunphy, supra*. It is there said: "The right of jury trial secured by the article of the constitution under consideration [seventh amendment], referring not only to trial in the national courts established by the constitution, and the territorial district courts, at least while in the exercise merely of their local jurisdiction, not being embraced under its provision, it is urged that the court below did not err in receiving the findings. This position could only be maintained by holding that, while the constitutional restriction applied to the federal judiciary, it did not extend to the legislative power intended to be restricted. We have already stated that it was intended to restrict all the departments of the federal government, legislative as well as judicial. If, then, it is restrictive upon Congress, as well as upon the federal courts, can Congress, in the exercise of its power to create a territory, create a local legislature or local courts, and delegate to either a power which it does not itself possess to deny the right in question? We think clearly it cannot." "Even without the provision of the organic act, that the constitution and laws not locally inapplicable shall have the same force and effect in the territories as elsewhere within the United States, the conclusion would be the

same.    Congress has not power, either directly or by a delegation of power to another body of its own creation, to deny a citizen of a territory the right of trial by jury in a suit at common law, where the value in controversy exceeds twenty dollars."

In the case of *Callan* v. *Wilson*, 127 U. S. 540, 8 Sup. Ct. 1301, the supreme court holds that the provision in the constitution relating to trial by jury is in force in the District of Columbia.  In this case, Mr. Justice Harlan, in delivering the opinion of the court, says:  "It was taken for granted that the sixth amendment of the constitution secured to the people of the territory the right of trial by jury in criminal prosecutions.  It had previously held in *Webster* v. *Reed*, 11 How, 437, that the seventh amendment secured to them a like right in civil cases at common law.  We cannot think that the people of this District [Columbia] in that regard have less rights than those granted to the people of the territories of the United States."  This case came up on the Revised Statutes of the District of Columbia (section 1064), dispensing with the petit jury in prosecution by information in the police court. The judgment of the police court was declared void, because it denied to the accused the right of trial by jury guaranteed to him by the constitution.  In the case of *Webster* v. *Reed, supra,* the court says:  "By the seventh article of the amendment of the constitution it is declared, 'in suits at common law, where the value in controversy exceeds twenty dollars, the right of trial by jury shall be preserved.'  The organic law of the territory of Iowa, by express provision and by reference, extended the law of the United States, including the ordinance of 1787, over the territory, so far as they were applicable.  The act under which the above proceedings were had prohibited the trial by jury in matters of fact on which the suits were founded.  In this respect the act was void."  The

act referred to in the above citation was one passed by the territorial legislature of Iowa, dispensing with jury trials in suits involving the title of land in the territory known as "Half Breed Lands." In the case of *Hornbuckle* v. *Toombs,* 18 Wall. 652, Mr. Justice Bradley, in discussing the thirteenth section of the organic act creating the territorial government of Montana, which is the same as the seventeenth section of the organic act of this territory, says: "The clause has the effect undoubtedly of importing into the territory the laws passed by Congress to prevent and punish offenses against the revenue, and other laws of a general character and universal application." There is no principle underlying our judicial system of a more "general character," none of more "universal application" within the sphere of federal cognizance, than that the right of trial by a common-law jury shall be preserved to litigants. The legislation of Congress for the federal courts provides for and preserves such a jury. It is general to all federal tribunals; it is not special or unusual legislation; it has no "specific application."

Can it be contended that congressional legislation of a general character and of universal application is not extended over the territories; that those features of the constitution which are "general," and of a broad and universal application as applied to the federal government, have no force or effect therein? An act of Congress limiting the number of peremptory challenges in impaneling the petit jury would be an example of special application. Not so a statute in harmony with the sixth amendment, providing that in all criminal prosecutions the accused shall enjoy the right of a speedy and public trial by an impartial jury, or one preserving the "right of trial by jury in suits at common law." Conceding the sovereign dominion of Congress over the territories as announced in *National Bank* v. *Yankton Co.,* 101 U. S. 129, and *Mur-*

*phy* v. *Ramsay*, 114 U. S. 44, 5 Sup. Ct. 747, we are confronted with the fact that its legislation for them has been predicated upon the constitution, and its limitations have been consulted, *a fortiori*, it could be argued the legislation of the territories created in disregard of constitutional restrictions would be invalid. But in dealing with the territories Congress must observe all the prohibitions reserved in the constitution, either expressly or by implication. *National Bank* v. *Yankton Co., supra.* Therefore, if it had assumed to legislate upon the subject of juries in civil cases, it would have resorted to the constitution to ascertain its authority, and the result would have been a jury of 12 acting upon a unanimous determination. Section 9 of the organic act confers "common-law and chancery jurisdiction" upon the supreme and district courts of the territory. This is not only a grant of power, but a limitation thereon; and means that in the trial of controversies cognizable at common law and determined by a common-law jury the jurisdiction is to be exercised and proceedings to be conducted in harmony with the fundamental principles well known and universally recognized at common law. Being clothed with common-law jurisdiction, the territorial courts cannot put it off, but must observe the essential forms of the common-law. And the words granting this jurisdiction are limitations upon the local legislature, and it cannot abolish the common-law jury, or abridge the litigant's right to its enjoyment.

If any additional authority is required to show the intention of Congress to preserve in the territories the common-law trial by jury, it is to be found in the act of April 7, 1874 (18 Stat. 27). It reads as follows: "That it shall not be necessary in any of the courts of the several territories of the United States to exercise separately the common law and chancery jurisdictions vested in said

courts; and that the several codes and rules of practice adopted in said territories respectively, in so far as they authorize a mingling of said jurisdictions on a uniform course of proceeding in all cases, whether legal, or equitable, be confirmed; and that all proceedings heretofore had or taken in said courts in conformity with said respective codes and rules of practice so far as relates to the form and mode of proceeding, be, and the same are hereby validated and confirmed; provided, that no party has been or shall be deprived of the right of trial by jury in cases cognizable at common law." This language is unequivocal. It is not only a recognition by Congress of the existence of the common-law jury in the territories, but it is a positive prohibition against any infringement or impairment of the right to its enjoyment. It is tantamount to saying that the mere matter of procedure in the territorial courts is relegated to the territorial legislatures, but that, upon all questions of a general and usual character pertaining to fundamental and constitutional rights, such as the right of jury trial, they are circumscribed by the laws of Congress and the federal constitution. If tested by this act alone, the legislative enactment of 1892, above referred to, would be invalid, because it is in direct contravention of it. This "right" is not preserved by impaneling a jury of 12 and permitting a verdict by less than 12. This question has been ably discussed in the supreme court of Oklahoma. Governed by the same provisions as those contained in the organic act of this territory relating to the legislative power, etc., the legislature passed a jury law similar to that of 1892. The court declares it unconstitutional. The decision in the case of *Hess* v. *White, supra,* is criticised, and the error which this court has fallen into in failing to distinguish between mere forms of procedure and substantive and definitive rights is clearly pointed out. *Bradford* v. *Territory,* 34

Pac. 66. And the supreme court of Arizona has recently held the same way upon this question. *Carroll* v. *Byers,* 36 Pac. 499. The case of *Clinton* v. *Englebrecht,* 13 Wall. 434, is relied upon to vindicate the legislative act in question. While it is there held that the matter of selecting, impaneling, and summoning juries is left to the territorial legislature, there is nothing that could be construed as an indorsement or recognition of the validity of the act of 1892 in respect to juries, or of the power of the territorial legislature to abolish or abridge this right, so interwoven with the history of our country. Upon the contrary, the words of the chief justice, " as there is no provision relating to the selection of juries in the constitution or the organic act, it cannot be said that any legislation upon this subject is inconsistent with either," unerringly indicate that, if the constitution had spoken upon this subject, it would have included the territory. This language can only mean that the federal constitution is a limitation upon the territories to the same extent as upon Congress. A provision in the constitution, relating to the impaneling of juries, would, there can be no doubt, have been a limitation upon Congress, and not upon the states; so the chief justice in effect says: Wherever provisions are found in the constitution applicable to the federal government they are extended to the territory.

Various acts of the legislature of Utah relating to procedure in the courts have been reviewed by the Supreme Court of the United States, and because that court has upheld them, and insisted upon their being followed by the territorial courts, it has been contended that it was an adjudication of the right of the territory to legislate in disregard of the constitution. As stated above, the argument is fallacious; it is confounding a question of practice with a legal right. The practice and course of procedure of the territorial court as a local tribunal may be regulated by

the local laws, provided its common law and chancery jurisdiction be not impaired; but such laws must not infringe any principle of the constitution or any act of Congress applicable to it. *Kleinschmidt* v. *Dunphy, supra.* And in *Hopt* v. *Utah*, 110 U. S. 579, 4 Sup. Ct. 202, the principle is again recognized that the amendments to the constitution apply to the territories. Hopt was prosecuted for violating a territorial statute, was tried in a territorial court, and, while the practice of the court, prescribed by the legislature, was regarded as paramount, the supreme court held that it would be in violation of the constitutional amendment to deprive him of "life and liberty without due process of law." In *Miles* v. *U. S.*, 103 U. S. 310, the constitution is appealed to by the court, and it declares, in effect, there must be no "invasion of the constitutional or other rights" of the plaintiff in error. There would be no constitutional provision to shield him. There could be "no invasion of his constitutional rights" if *Hess* v. *White* is decided correctly. And in the case of *People* v. *Daniels*, 6 Utah, 297, 22 Pac. 159, the court enunciated the correct doctrine; and, when the defendant invoked the constitutional amendment that "private property shall not be taken for public use without just compensation," it was declared that "this was a restriction upon the power of Congress, and not upon the states, * * * and that, the territory being an agency of Congress, the restriction applies to the legislature." If the doctrine of *stare decisis* had been regarded, the case just cited would have been decisive of *Hess* v. *White*, for it is directly held that the limitations upon the states are not extended to the territory, but that constitutional provisions which are restrictions upon the federal government are in force therein.

I am of the opinion that the decision in the case of *Hess* v. *White* is erroneous; that the act of the legislature

of 1892 is in violation of the seventh amendment to the constitution and therefore void. For this reason I think the case last mentioned should be overruled, and that the case at bar should be reversed, and remanded for a new trial.