THE PEOPLE OF PUERTO RICO, Plaintiff and Appellant, *v.* THE SHELL Co. (P.R.) LTD., ET AL., Defendants and Appellees.*

No. 5802. Argued December 11, 1935.—Decided December 20, 1935.

*R. A. Gómez, Prosecuting Attorney,* and *Luis Janer, Assistant Prosecuting Attorney,* for appellant. *Hartzell, Kelley & Hartzell, R. O. Fernández García,* and *P. Juvenal Rosa* for Pyramid Products, Inc., and others; and *Jaime Sifre, Jr.,* and *Orlando J. Antonsanti* for The Shell Co. (P. R.) Ltd., and others.

MR. JUSTICE CÓRDOVA DÁVILA delivered the opinion of the court.

On May 28, 1934, the prosecuting attorney for the district of San Juan filed an information against several persons for a violation of the "Act to protect trade and commerce against unlawful restraints and monopolies," approved on March 14, 1907. The offense charged consists in that the said persons, within the year next preceding the commencement of the prosecution and prior thereto, had combined to monopolize, as indeed they did monopolize, the

---

* NOTE.—A judgment of the U. S. Circuit Court of Appeals for the First Circuit (86 F. (2d) 577) affirming this decision was reversed December 6, 1937, on certiorari, by the Supreme Court of the United States. See *Puerto Rico* v. *Shell Co.,* 302 U. S. 253.

trade and commerce in the distribution and sale of gasoline in the Municipality of San Juan and in the towns within the judicial district of San Juan, Puerto Rico.

The defendants interposed demurrers to the information, alleging, among other grounds, that the court had no jurisdiction to take cognizance of the said prosecution because the Act to protect commerce against unlawful restraints and monopolies, passed by the Legislature of Puerto Rico in 1907, never was, nor is now, in force and is and has always been void, since the Legislature of Puerto Rico had not then, nor has now, the power to enact legislation with respect to a subject over which the Congress of the United States has exclusive jurisdiction and on which the said Congress has already legislated.

The District Court of San Juan ordered the dismissal of the case on the ground that the Act of March 14, 1907, to protect commerce against unlawful restraints and monopolies, has no legal force. It was held by the lower court that the applicable law is the Sherman Act, supplemented in 1914 by the Clayton Act, because it covers the whole ground of the local statute, as was declared by this court in *United Theatres* v. *District Court*, 47 P.R.R. 687.

The People of Puerto Rico appealed from that order, and now the appellees have moved for a dismissal of the appeal because the same is frivolous and does not lie.

██ The lower court is correct when it says, in conformity with the opinion of this court in *United Theatres* v. *District Court, supra,* that the Sherman Act covers the entire ground of the local law. We have carefully examined the federal statute and we may say that substantially the Puerto Rican law is contained in the first, second, fourth, fifth, seventh, and fifteenth sections of the said Act. The third section of the federal statute declares unlawful every contract, combination in form of trust or otherwise, or conspiracy, in restraint of trade or commerce in any Territory of the United States or the District of Columbia. Every per-

son who shall make any such contract or engage in any such combination or conspiracy, shall be deemed guilty of a misdemeanor, and may be punished by fine not exceeding $5,000, or by imprisonment not exceeding one year, or by both said punishments, in the discretion of the court. We have declared that the Sherman Act is not locally inapplicable, and therefore that it is in force in Puerto Rico; and we have held, construing and following the doctrine laid down in *El Paso & N.E. Ry.* v. *Gutiérrez,* 215 U.S. 87, that the act of Congress is supreme, because it covers the entire ground of the local law. Indeed, the same matter has been the subject of legislation by both legislative bodies: the National Congress and the Legislature of Puerto Rico. There is no doubt that the defendants are charged with an offense punished by the federal statute and by our own statute.

In *Davis* v. *Beason,* 133 U.S. 333, 340, it was alleged that sections 501 and 504 of the Revised Statutes of Idaho were void, among other reasons, because Congress had already legislated upon the same subject. ''It is now settled,'' said the appellant in that case, ''that when powers are exercised by Congress, the concurrent power in the inferior legislature ceases or is in abeyance; that the two legislative wills cannot be exercised at the same time upon the same subject matter, and that of Congress, within its sphere, is 'the supreme law of the land.' '' Citation was made of *Ex parte McNiel,* 13 Wall. 236, 240; *Gilman* v. *Philadelphia,* 3 Wall. 713, 727; *Pennsylvania* v. *Wheeling etc., Bridge Co.,* 18 How. 421, 430; *Railroad Co.* v. *Fuller,* 17 Wall. 560, 568. In the opinion of the Court, delivered by Mr. Justice Field, the following was said:

''. . . In our judgment, par. 501 of the Revised Statutes of Idaho Territory, which provides that 'no person under guardianship, *non compos mentis* or insane, nor any person convicted of treason, felony, or bribery in this Territory, or in any other State or Territory in the Union, unless restored to civil rights; nor any person who is a

bigamist or polygamist or who teaches, advises, counsels, or encourages any person or persons to become bigamists, or polygamists, or to commit any other crime defined by law or to enter into what is known as plural or celestial marriage, or who is a member of any order, organization or association which teaches, advises, counsels, or encourages its members or devotes or any other persons to commit the crime of bigamy or polygamy, or any other crime defined by law, either as a rite or ceremony of such order, organization, or association or otherwise, is permitted to vote at any election, or to hold any position or office of honor, trust, or profit within this Territory,' is not open to any constitutional or legal objection. With the exception of persons under guardianship or of unsound mind, it simply excludes from the privilege of voting, or of holding any office of honor, trust or profit, those who have been convicted of certain offenses, and those who advocate a practical resistance to the laws of the Territory and justify and approve the commission of crimes forbidden by it. The second subdivision of par. 504 of the Revised Statutes of Idaho, requiring every person desiring to have his name registered as a voter to take an oath that he does not belong to an order that advises a disregard of the criminal law of the Territory, is not open to any valid legal objection to which our attention has been called.''

According to section 504 of the Revised Statutes of Idaho to which the Supreme Court refers, any person desiring to register as a voter must, among other things, take an oath that he is not a member of any order, organization, or association which teaches, advises, or encourages its members, devotees, or any other persons to commit the crime of bigamy or polygamy, or any other crime defined by law, as a duty arising from membership in such order, organization, or association, or which practices bigamy, polygamy, or plural or celestial marriage as a rite of such organization.

Referring to the act of Congress, Mr. Justice Field further said:

''The position that Congress has, by its statute, covered the whole subject of punitive legislation against bigamy and poligamy, leaving nothing for territorial action on the subject, does not impress us as entitled to much weight. The statute of Congress of March 22, 1882, amending a previous section of the Revised Statutes in reference to

bigamy, declares 'that no polygamist, bigamist, or any person cohabiting with more than one woman, and no woman cohabiting with any of the persons described as aforesaid in this section, in any Territory or other place over which the United States have exclusive jurisdiction, shall be entitled to vote at any election held in any such Territory or other place, or be eligible for election or appointment to or be entitled to hold any office or place of public trust, honor or emolument in, under, or for any such Territory or place, or under the United States.' 22 Stat. 31, c. 47, par. 8.

"This is a general law applicable to all Territories and other places under the exclusive jurisdiction of the United States. It does not purport to restrict the legislation of the Territories over kindred offenses or over the means for their ascertainment and prevention. The cases in which the legislation of Congress will supersede the legislation of a State or Territory, without specific provisions to that effect, are those in which the same matter is the subject of legislation by both. There the action of Congress may well be considered as covering the entire ground. But here there is nothing of this kind. The act of Congress does not touch upon teaching, advising and counselling the practice of bigamy and polygamy, that is, upon aiding and abetting in the commission of those crimes, nor upon the mode adopted, by means of the oath required for registration, to prevent persons from being enabled by their votes to defeat the criminal laws of the country."

We have cited the above case because it holds that a local statute which provides, among other things, that no bigamist or polygamist shall be entitled to vote at any election or to hold any position or office of honor, trust, or profit, within the Territory, is not open to any constitutional or legal objection, notwithstanding the fact that the federal statute covers, in this particular, the same ground when it declares that no polygamist or bigamist shall be entitled to vote at any election held in any such Territory or other place, or be eligible for election or appointment to or be entitled to hold any office or place of public trust, honor or emolument in, under, or for any such Territory or place, or under the United States.

The Court, however, laid down the principle that the cases in which the legislation of Congress will supersede the legis-

lation of a State or Territory, without specific provisions to that effect, are those in which the same matter is the subject of legislation by both. There the action of Congress may well be considered as covering the entire ground of the local statute. "But here there is nothing of this kind," said the Court; and it added that the act of Congress contains no provision regarding the teaching, advising, and counselling the practice of bigamy or polygamy. In the instant case no such distinction can be made. The act of Congress covers the entire ground of the local statute, and we must necessarily confirm our decision in *United Theatres* v. *District Court, supra,* where we followed what, in our judgment, constitutes the doctrine laid down by the Supreme Court of the United States.

The appellees contend that a state law may coexist with a federal statute even though both regulate the same subject, because there would be involved two entities equally sovereign within the limits of their respective jurisdictions, but that such is not the case as regards the territories, which are not political organizations or communities with independent sovereignty but are subject to the control of the Congress of the United States, which as to them is the only sovereign power. It follows from this as an unavoidable corollary, according to the appellees, that once Congress has legislated upon a particular subject, a territory can not take any step which even involves an intent to legislate upon the same subject. In support of this theory, citation is made of the case of *Grafton* v. *United States,* 206 U.S. 333, 51 L. ed. 1091, in which the Supreme Court of the United States expressed itself thus:

". . . The Government of the United States has no power, except such as expressly or by necessary implication has been granted to it, while the several States may exert such powers as are not inconsistent with the Constitution of the United States nor with a republican form of government and which have not been surrendered by them to the General Government. An offense against the United States can only be punished under its authority and in

the tribunals created by its laws; whereas, an offense against a State can be punished only by its authority and in its tribunals. The same act, as held in Moore's case, may constitute two offenses, one against the United States and the other against a State. But these things cannot be predicated of the relations between the United States and the Philippines. The Government of a State does not derive its powers from the United States, while the Government of the Philippines owes its existence wholly to the United States, and its judicial tribunals exert all their powers by authority of the United States. The jurisdiction and authority of the United States over that territory and its inhabitants, for all legitimate purposes of government, is paramount. So that the cases holding that the same acts committed in a State of the Union may constitute an offense against the United States and also a distinct offense against the State, do not apply here, where the two tribunals that tried the accused exert all their powers under and by authority of the same government—that of the United States."

In the last-cited case, a soldier in the army of the United States, charged with the killing of a human being, was tried and acquitted by a court-martial. Subsequently a criminal information was filed in the name of the United States in a court of first instance. The accused was tried and sentenced to twelve years' imprisonment. He took an appeal to the Supreme Court of the Philippine Islands based upon his plea of double jeopardy. That court affirmed the judgment rendered by the court of first instance, and upon the case being appealed to the Supreme Court of the United States, the latter tribunal reversed the said judgment and discharged the accused on the ground that he had been twice tried for the same offense. Although the principles laid down by the Supreme Court may have some relation to those applicable in the case at bar, however, it is well to bear in mind that in the case from the Philippine Islands the controversy was not as to the supremacy of the federal law over the local statute but as to the plea of former jeopardy set up by the accused.

The prosecuting attorney (Fiscal) argues that the mere fact that the federal statute is in force and applicable to

Puerto Rico, and that it covers the same subject as the local statute, can not mean that the latter statute has become without any legal force or effect, if the fact is borne in mind that the local law is not in conflict with the federal statute. In support of this contention, citation is made of the case of *Territory* v. *Long Bell Lumber Co. et al.*, 22 Okla. 890, 99 P. 911, where the Supreme Court of Oklahoma upheld a territorial statute against monopolies, enacted some time after the Sherman Act went into effect. From the opinion delivered in that case, we transcribe the following:

". . . Within the limitations noticed, the legislative power for local self-government is quite as extensive in a territory as in a state. The policy of the government is to give to it the fullest opportunity to govern itself and prepare for statehood.

"The Supreme Court of the United States in the case of *Clinton* v. *Englebrecht*, 13 Wall. 434, 20 L. Ed. 659, has specifically so held. The court said:

" 'The theory upon which the various governments for portions of the territory of the United States have been organized has ever been that of leaving to the inhabitants all the powers of self-government consistent with the supremacy and supervision of national authority and with certain fundamental principles established by Congress.'

"This in our judgment is a correct statement of the rule involved, and the determination of the extent to which Congress has granted the right to the territory of Oklahoma to legislate must be ascertained from a construction of the powers specifically granted in section 6 of the Organic Act, *supra*, taken in connection with the manifest policy of the government in granting the power of legislation upon all rightful subjects of legislation as set forth above. If the act of the territorial Legislature passed for the purpose of making effective and enforcible by its own authorities, an act to prevent combinations in restraint of trade, was not in conflict and in no wise interfered with or affected the enforcement by the federal authorities of the act of Congress, then it occurs to us that there is no good reason for saying that the same was annulled and rendered nugatory as soon as enacted by such previous act. There is nothing in the federal act prescribing or prohibiting to the legislative authority of the territory the right to legislate upon this identical subject, nor is the same contained in any act of Congress to which our atten-

tion has been called. The right to legislate upon this subject and to have its act enforced by its own authorities was a valuable one to the people inhabiting the territory, and it ought not to be taken away by any strained or arbitrary construction.''

The Supreme Court of Oklahoma, in an elaborate opinion, carefully considered the question raised and upheld with copious citations the validity of the local statute. This would also be our view, if we did not feel restrained by the decisions of the Supreme Court of the United States. It may be that we have wrongly interpreted the doctrine laid down by that high court, in which case, we would be glad to know that we were mistaken and that our error was corrected; but up to the present time we have not been convinced that we erred in such interpretation. The right of th · Insular Legislature and officers to prosecute and punish such monopolies as may be set up within our jurisdiction is really inestimable. It was so understood by our Legislature when it took upon itself to legislate on the subject. This is a wholesome and necessary legislation that should be enforced through the insular courts. It must be admitted that the People of Puerto Rico has a special interest in prosecuting before the courts those citizens who violate its own laws. No matter how interested the National Government may be in prosecuting such offenses, instances might occur where the latter would pass unnoticed by the federal officers, or where, for some reason or other, such officers might not display the same activity and interest that is to be expected from the local officials.

The appeal is alleged to be frivolous. This is not so, regard being had for the importance and significance of the question raised by the defendants and determined by the court below. However, as this court has already expressed its viewpoint on the subject confirming the doctrine laid down in *People* v. *Galanes et al.*, 15 P.R.R. 265, we feel bound to dismiss the appeal taken.

Mr. Justice Wolf dissented.